UNITED STATES of America,
Plaintiff–Appellee,

v.

David Lee GREEN, Defendant–Appellant.

No. 96–2408.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1996.

Decided April 14, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied June 3, 1997.

Lawrence Beaumont, argued, Office of the United States Attorney, Urbana Division, Urbana, IL, for Plaintiff–Appellee.

Neill Schurter, argued, Rantoul, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and COFFEY and MANION, Circuit Judges.

MANION, Circuit Judge.

David Green was convicted of possession of crack cocaine with intent to distribute, and possession of a firearm by a felon. Green appeals, asserting that the district court erred in denying his motion to suppress evidence of these crimes obtained during an automobile search, and that it erred in sentencing him. While we conclude that Green was illegally stopped, the taint from that illegal seizure dissipated prior to the automobile search because of intervening circumstances, namely the arrest of the car's other occupant, David's brother Avery Green, on an outstanding warrant. Because the taint had dissipated, the evidence obtained during the search of the auto was admissible as a search incident to the arrest. The district court also properly sentenced David Green. Accordingly, we affirm.

## I. Background

At about 9:00 p.m. on July 2, 1995, Sergeant Murphy and Officer Walker of the Champaign, Illinois Police Department were on patrol. The officers noticed a blue Chevrolet driving in front of them. Officer Walker told Sergeant Murphy that the same car had been parked on the road in front of Mark Williams' residence the night before. The officers knew that Mark Williams was wanted on a federal warrant for being a felon in possession of firearms. Thinking that the Chevrolet's occupants might include Williams, or know Williams' whereabouts, the officers followed the Chevrolet as it turned a corner. After turning, the Chevrolet made a U-turn, turned abruptly onto another street, and then turned immediately into a driveway. The officers followed, pulling their car across the driveway, blocking in the Chevrolet.

By the time the officers had stopped, the Chevrolet's driver was walking toward the house. Sergeant Murphy exited the police car and, while approaching the driver, yelled that he needed to speak with him for a second. The driver stopped; Sergeant Murphy then asked for some identification which the driver produced identifying himself as David Green. In the meantime, Officer Walker obtained the identification of the passenger who was still in the car and who, as it turned out, was David's brother Avery Green. The officers returned to the squad car and entered the information in their computer to determine the validity of the drivers' licenses, as well as to check for any outstanding warrants. Within five minutes the computer revealed an outstanding warrant for Avery Green. Supplied with this information, the officers arrested Avery. According to Sergeant Murphy, David Green then agreed to let Murphy search the vehicle; David Green denies that he gave Murphy permission to look in the car. During the search, Murphy discovered crack cocaine in a shopping bag on the floor in front of the driver's seat, and a gun in a gym bag on the floor on the passenger's side. The officers then arrested David Green.

A grand jury indicted David Green, charging him with one count of possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); one count of using and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c); and one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). David pleaded not guilty and filed a motion to suppress the gun and the cocaine, arguing that they were obtained in violation of his fourth amendment rights. The district court denied David's motion to suppress, and the case proceeded to trial. The court entered a judgment of acquittal on count two, using and carrying a firearm in relation to a drug trafficking crime, based on

*Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). A jury convicted Green on the remaining two counts. Green was sentenced to 135 months on count one, and 120 months on count three, to be served concurrently. Green appeals.

## II. Analysis

On appeal Green asserts that the district court erred in denying his motion to suppress the gun and the crack cocaine seized during the police officers' July 2, 1995 search of the Chevrolet. Green also argues that the district court erred in sentencing him based on the Sentencing Guidelines which apply to crack cocaine, instead of cocaine hydrochloride, and in enhancing his sentence for the possession of a firearm in relation to a drug offense.

### A. *Motion to Suppress*

■ Green moved to suppress the evidence obtained during the search of the automobile he was driving. The district court denied Green's motion, concluding that the officers conducted a legitimate investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that "[s]ince less than five minutes elapsed while the police discovered the arrest warrant, the duration of the stop is reasonable for a *Terry* stop." The district court reasoned that because the police had probable cause to arrest Avery, they were entitled to search the passenger compartment of the car incident to the arrest and therefore it was irrelevant whether Green had consented to the search as the officers claim, or had not, as Green claims. Given that the stop and search were both lawful, the district court concluded that the evidence obtained during the search was admissible.

■ "In reviewing a district court's ruling on a motion to suppress, we review questions of law *de novo. United States v. Trevino,* 60 F.3d 333, 336 (7th Cir.1995). We review factual findings for clear error, ... *United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994)." *United States v. Liss,* 103 F.3d 617, 620 (7th Cir.1997). "We review district court determinations of reasonable suspicion and probable cause *de novo.*"

*United States v. Finke,* 85 F.3d 1275, 1278 (7th Cir.1996) (citing *Ornelas v. United States,* —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

Green argues that while the officers were justified in stopping his car to ascertain whether Mark Williams was present, because the officers quickly recognized that neither the defendant nor his passenger was Mark Williams they were required to let them go immediately. Thus, Green reasons, the officers violated the Fourth Amendment by continuing to detain them in order to run a computer search for outstanding warrants.

In support of his position, Green cites *United States v. McSwain,* 29 F.3d 558, 560–61 (10th Cir.1994). In *McSwain,* a Utah highway trooper stopped a vehicle to determine the validity of its temporary registration sticker. As he approached the car, the officer examined the temporary sticker and determined that it was valid. After satisfying the suspicion which justified the stop, the officer continued the detention, asking for the driver's license and registration. The officer ran a background check on the driver, learned he had a suspended license and a prior record of drug and gun violations. The officer then returned to the car and questioned the driver, eventually gaining consent to search the vehicle. In searching the vehicle, the officer discovered a duffel bag which contained crack cocaine. The district court denied *McSwain*'s motion to suppress, but the Tenth Circuit reversed, stating:

> Trooper Avery stopped Mr. McSwain for the sole purpose of ensuring the validity of the vehicle's temporary registration sticker. Once Trooper Avery approached the vehicle on foot and observed that the temporary sticker was valid and had not expired, the purpose of the stop was satisfied. Trooper Avery's further detention of the vehicle to question Mr. McSwain about his vehicle and travel itinerary and to request his license and registration exceeded the scope of the stop's underlying justification.

After concluding that the police illegally detained McSwain by exceeding the purpose of the *Terry* stop, the court considered the va-

lidity of the consent to search and concluded that based on the totality of the circumstances the consent to search was invalid. Similarly, here Green asserts that the officers exceeded the purpose of stopping the car-to determine if Williams was in the car—and thus the seizure was illegal and the evidence obtained tainted by that illegality.

The government responds that the officers originally stopped the Greens for two reasons: to determine if Mark Williams was present in the car, and to ask the passengers whether they knew of Williams' location. Thus, even though the officers recognized that Williams was not present, the government maintains that the officers still had grounds to detain the Greens in order to question them. Because one of the justifications for the stop remained, the government reasons that the officers were justified in running a computer search to determine if there were any outstanding warrants on the Greens. The government asserts that because this took less than five minutes and was a necessary safety precaution, it was allowed under *Terry.*

Case law supports the government's position that running a computer search for warrants during traffic stops is constitutional. *Finke,* 85 F.3d at 1279 (detention after traffic stop for results of criminal history check was valid given reasonable suspicion of drug activity); *United States v. McRae,* 81 F.3d 1528, 1535–36 n. 6 (10th Cir.1996) ("[Criminal history] checks are run largely to protect the officer. Considering the tragedy of the many officers who are shot during routine traffic stops each year, the almost simultaneous computer check of a person's criminal record, along with his or her license and registration, is reasonable and hardly intrusive."); *id.* ("We have stated that an officer conducting a routine traffic stop may 'run a computer check.' ") (quoting *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1483 (10th Cir.1994)) (additional citations omitted). But, as Green points out, the officers never questioned him or his brother about Mark Williams. Thus, Green argues, the officers' second reason for detaining him is incredible and could not justify the continued detention during the computer search. The officers reply that they never questioned the Greens

because before they had a chance to do so, they discovered the outstanding warrant against Avery.

In denying Green's motion to suppress, the district court found as the reason the officers stopped the Greens that: "Murphy wondered if Mark Williams was in the car or if Murphy might be able to develop information from the occupants that would lead to the whereabouts of Williams." We review this finding for clear error. We are admittedly skeptical of the officers' testimony, given that at oral argument the government confirmed that to this day no one has asked either of the Greens about Mark Williams' location and that Williams is still a fugitive. Nevertheless, we need not decide whether the court committed clear error in finding that Murphy stopped the car to question the Greens about Williams' whereabouts because the stop in the first instance was illegal.

■■■ "A traffic stop is similar to an investigative detention and is thus governed by the principles set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry* the stop must be justified at its inception and be reasonably related in scope to the circumstances which justified the interference in the first place." *Finke,* 85 F.3d at 1278–79 (internal citations omitted). "An officer may make a *Terry* stop 'when [he] has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.' " *United States v. Troka,* 987 F.2d 472, 474 (7th Cir.1993). The officer "may not, however, rest only upon his intuition; the officer must provide 'specific' and 'objective' facts justifying the stop." *Id.* (citing *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981)). In weighing the specific and objective facts, we look to the totality of the circumstances. *Cortez,* 449 U.S. at 417, 101 S.Ct. at 694–95.

■■ In this case, the only specific and objective fact the government points to justifying the stop of Green's car is that "Officer Walker previously saw the defendant's car in

front of Williams' house." [1] [Appellee's Br. at 9]. That on one occasion a car is parked on the street in front of a house where a fugitive resides is insufficient to create reasonable suspicion that the car's occupants had been or are about to engage in criminal activity. The officers did not claim that the occupants fit the description of Williams; that they were seen entering or leaving the house, or talking with Williams; or that the car was seen in front of the house on multiple occasions or at strange .times. Thus, the *Terry* stop was not justified at its inception. [2]

■ Green conceded that the officers were justified in stopping the car to determine if Williams was present or to ask about his whereabouts. Normally, this would result in waiver. But because the same justification for stopping the automobile in the first place is asserted as justifying the continued detention, we must consider whether the stop was justified in the first instance. It was not. Therefore, the continued detention of the Greens while the police ran the computer search for arrest warrants also violated the Fourth Amendment.

■ Green reasons that because the police violated the Fourth Amendment by detaining him and his brother while they ran the computer search, and because the computer search resulted in the police discovering the outstanding warrant for Avery, and because this caused them to arrest Avery which in turn justified the search as a search incident to an arrest, ·and because this allowed the police to discover the cocaine and the gun, the cocaine and the gun are inadmissible as fruits of the illegal seizure under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Green is correct that "but for" the illegal traffic stop, the police would never have discovered the cocaine and the gun. But in *Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. at 417–18, the Supreme Court did "not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." Thus, "[e]ven in situations where the exclusionary rule is plainly applicable, [the Supreme Court has] declined to adopt a 'per se' or 'but for' rule that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest." *United States v. Ceccolini,* 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268 (1978). *See also Liss,* 103 F.3d at 620 ("Initially, we note that the Supreme Court has rejected a 'but for' test of suppression."). "Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong*

1. During the hearing on the motion to suppress, both officers testified that they did not stop the Greens, but rather the Greens stopped on their own. The district court did not understand this to be an argument that no stop in the constitutional sense (i.e. a *Terry* stop) had occurred. Nor does the government make that argument on appeal. Nor would we be persuaded by such an argument because, while in some circumstances a driver may stop his automobile on his own resulting in a consensual encounter, *United States v. Langston,* 970 F.2d 692, 697–98 n. 3 (10th Cir.1992) (consensual encounter when driver pulled over after an officer drove up alongside him and made eye contact); *United States v. Hernandez,* 93 F.3d 1493, 1498 (10th Cir.1996) ("A traffic stop may become a consensual encounter if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority."), in this case, the officers pulled their car in behind the Greens, blocking the car's exit. Under these circumstances, a reasonable person would not feel that he was free to leave. *United States v. Packer,* 15 F.3d 654, 657 (7th Cir.1994) (blocking suspect's car and thereby preventing departure constituted a *Terry* stop); *United States v. Lechuga,* 925 F.2d 1035, 1037, 1039 (7th Cir.1991) (placing police vehicles· directly in front of and behind defendant's vehicle is a *Terry* stop). Thus, for purposes of the Fourth Amendment, the officers stopped the Greens—it was not a consensual encounter.

2. During the suppression hearing the officers also testified that while following the Greens, David Green doubled back, made an abrupt left turn, and then immediately turned into a driveway. The government did not rely on these facts as a basis of reasonable suspicion either before the district court or in its brief to this court. Even considering these facts, our decision is unchanged.

*Sun*, 371 U.S. at 488, 83 S.Ct. at 417 (quoting Maquire, Evidence of Guilt, 221 (1959)).

▮ Evidence may be "sufficiently distinguishable to be purged of the primary taint" if "the causal connection between [the] illegal police conduct and the procurement of [the] evidence is 'so attenuated as to dissipate the taint' of the illegal action." *Liss*, 103 F.3d at 620 (quoting *United States v. Fazio*, 914 F.2d 950, 957 (7th Cir.1990)). Generally, the attenuation doctrine is used to support the admission of evidence in three general categories. These include the admission of voluntary confessions obtained after illegal arrests, *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *United States v. Valencia*, 913 F.2d 378, 382 (7th Cir.1990), the admission of evidence obtained during consensual searches following illegal seizures, *United States v. Guzman*, 864 F.2d 1512, 1518 (10th Cir.1988), *United States v. Thompson*, 106 F.3d 794 (7th Cir.1997), *United States v. Chavez–Villarreal*, 3 F.3d 124, 127 (5th Cir.1993), or the admission of voluntary confessions given after *Miranda* warnings where an earlier confession was obtained before the defendant was advised of his fifth amendment rights. *Oregon v. Elstad*, 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985). The attenuation doctrine also permits the admission of a witness' testimony at trial where the identity of the witness was discovered during an unlawful search. *Ceccolini*, 435 U.S. at 280, 98 S.Ct. at 1062.

In *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975), the Supreme Court set forth three factors for determining whether the causal chain has been sufficiently attenuated to dissipate the taint of the illegal conduct: (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. In the final analysis, however, the question is still whether the evidence came from "the exploitation of that illegality or instead by means sufficiently distinguishable

to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417.

▮ In this case, only about five minutes elapsed between the illegal stop of the Greens and the search of the car. This weighs against finding the search attenuated. "[H]owever, the time span between the police misconduct and the [search] is not 'dispositive on the question of taint.'" *United States v. Fazio*, 914 F.2d 950, 958 (7th Cir. 1990). Rather, we must next consider the presence of intervening circumstances. The intervening circumstances of this case, because they are not outweighed by flagrant official misconduct, dissipate any taint caused by the illegal stop of the Greens. Specifically, after stopping the Green brothers, the officers discovered there was a warrant outstanding for Avery. Accordingly, the officers arrested Avery. With the right to arrest Avery came the right to conduct a search incident to an arrest. *New York v. Belton*, 453 U.S. 454, 459–60, 101 S.Ct. 2860, 2863–64, 69 L.Ed.2d 768 (1981). This included the right to search the automobile's passenger's compartment to ensure there were no weapons and to protect the officers. *United States v. Mitchell*, 82 F.3d 146, 151–152 (7th Cir.1996).

It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of "Olly, Olly, Oxen Free." Because the arrest is lawful, a search incident to the arrest is also lawful. The lawful arrest of Avery constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop.

While there is no case law directly on point, *United States v. Nooks*, 446 F.2d 1283 (5th Cir.1971), *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir.1995), and *United States v. Bailey*, 691 F.2d 1009 (11th Cir. 1982), are closely analogous and support our conclusion. These cases involved situations where the defendant's original seizure was arguably unconstitutional, but after the initial illegal stop, circumstances developed giving the police probable cause to lawfully arrest the defendants. In arresting the defendants,

the police conducted searches incident to the arrests and found incriminating evidence. The defendants argued that the evidence was inadmissible as tainted by the original unlawful seizure. The Fifth, Eighth, and Eleventh Circuits disagreed. In *Nooks* the Fifth Circuit held that evidence obtained following a lawful arrest was admissible as a search incident to an arrest, even though the lawful arrest followed an originally illegal detention. *Nooks*, 446 F.2d at 1288. Similarly, in *Dawdy* the Eighth Circuit held that assuming *arguendo* the "initial stop and arrest of Dawdy were invalid, Dawdy's resistance provided independent grounds for his arrest, and the evidence discovered in the subsequent searches of his person and his automobile is admissible." *Dawdy*, 46 F.3d at 1431. Likewise in *Bailey*, the Eleventh Circuit held that the evidence discovered during a search incident to a second lawful arrest was admissible even though the original seizure was unconstitutional. *Bailey*, 691 F.2d at 1018–19.[3]

◼ Where a lawful arrest pursuant to a warrant constitutes the "intervening circumstance" (as in this case), it is an even more compelling case for the conclusion that the taint of the original illegality is dissipated. Typically, the intervening circumstance which dissipates the taint involves a voluntary act by the defendant, such as the voluntary confession or consent to search given after an illegal search or seizure. In intervening circumstance cases involving subsequent action on the defendant's part, courts exercise great care in evaluating the later consent or confession to ensure it is truly voluntary and not the result of the earlier, and unconstitutional, police action. *See Liss*, 103 F.3d at 621 ("the defendant's consent could be influenced by the belief that there is no reason to withhold consent because the

officers had already searched the location"). In such cases, the dispositive question is whether the illegal act "bolstered the pressures for him to give the [statement], or at least vitiated any incentive on his part to avoid self-incrimination." *Brown*, 422 U.S. at 605 n. 12, 95 S.Ct. at 2262 n. 12. *See also United States v. Patino*, 830 F.2d 1413, 1419 (7th Cir.1987) ("Here, as in *Brown* and *Dunaway*, the first confession was the product of the fourth amendment violation, and it could be found that the taint caused the second confession because Patino thought she had already given the same information in an admissible confession."). In these cases, the time between the illegality and the consent is important because the closer the time period, the more likely the consent was influenced by the illegality, or that the illegality was exploited. Conversely, where a lawful arrest due to an outstanding warrant is the intervening circumstance, consent (or any act for that matter) by the defendant is not required. Any influence the unlawful stop would have on the defendant's conduct is irrelevant. And in the case of an arrest made pursuant to a warrant there is also no chance that the "police have exploited an illegal arrest by creating a situation in which [the] criminal response is predictable," such as creating a situation where the criminal will flee, which in turn will give the police an independent basis for an arrest, and thus a search incident to the arrest. *United States v. Garcia–Jordan*, 860 F.2d 159, 161 (5th Cir.1988) (internal quotations omitted). Thus, in this case there is less "taint" than in the cases already recognized by the Supreme Court and this and other circuits as fitting within the intervening circumstances exception.[4]

---

**3.** Similarly, in *United States v. Pryor*, 32 F.3d 1192, 1196 (7th Cir.1994), we held that evidence of acts constituting a new crime should not be suppressed even if committed during an illegal detention. While the evidence admitted in *Pryor* was evidence of the second crime itself, and not evidence obtained during a search incident to a second lawful arrest, the same reasoning applies as in *Nooks, Dawdy* and *Bailey*.

**4.** The police also assert that Green consented to the search of the automobile, although Green

disputes this testimony. In some circumstances consent may dissipate the taint of an illegal stop. Because we conclude that the arrest pursuant to the existing warrant dissipated the taint of the illegal stop and justified the search as one incident to an arrest, we need not consider whether Green's alleged consent did as well, especially given that the district court did not make a finding of fact as to whether Green consented to the search.

Finally, we look to the "purpose and flagrancy of the official misconduct." This factor "is tied to the rationale of the exclusionary rule itself." *United States v. Fazio,* 914 F.2d 950, 958 (7th Cir.1990). "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Brown,* 422 U.S. at 600, 95 S.Ct. at 2260. "Because the primary purpose of the exclusionary rule is to discourage police misconduct, application of the rule does not serve this deterrent function when the police action, although erroneous, was not undertaken in an effort to benefit the police at the expense of the suspect's protected rights." *Fazio,* 914 F.2d at 958. This harkens back to *Wong Sun's* question of whether the evidence comes to light "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417–18. *See United States v. Melendez–Garcia,* 28 F.3d 1046, 1055 (10th Cir.1994) ("[T]he 'purpose and flagrancy' prong of the *Brown* test can only be aimed at exploring whether the police have exploited their illegal search.").

██ In this case, while the police inappropriately stopped the Greens, the purpose of the stop was not to seek evidence against the Greens, but to obtain evidence against Mark Williams. Additionally, while we have concluded that the stop does not meet constitutional standards, the district court concluded otherwise, and even the Greens accepted the initial stop as constitutional. There is also no evidence of bad faith on the part of the police. Under these circumstances, the violation was not flagrant. *See United States v. Boone,* 62 F.3d 323, 325 (10th Cir.1995) (mistaken belief of police that defendants had consented to search, while a fourth amendment violation, "does not qualify as flagrant misconduct that would tilt the scales against attenuation"). Nor did the police exploit the stop in order to search the automobile. Rather the search came only after they learned that Avery was wanted on a warrant and arrested him. While the officers learned of the outstanding warrant only after continuing the illegal detention, the arrest of Avery was not an exploitation of the illegal stop. Our conclusion that the evidence is admissible in this case also will not lessen the deterrent effect of the exclusionary rule on unconstitutional automobile stops because the general rule of exclusion is unchanged. It is only in the unusual case where the police, after a questionable stop, discover that an occupant is wanted on an arrest warrant that the intervening circumstances exception will apply. We also do not want to deter the police from arresting fugitives they discover, or from conducting a search incident to such an arrest. Thus, while we do not condone the officers' stop of the Greens, the intervening circumstances in this case dissipate any taint of the evidence obtained during the search of the automobile, which was justified as a search incident to an arrest. Therefore, Green was not entitled to have the cocaine and gun discovered during the search suppressed.

*B. Sentence*

██ David Green also appeals his sentence. First, he asserts that the government failed to prove that the cocaine found in his car was crack cocaine, as opposed to cocaine hydrochloride. We review this finding of fact for clear error. *United States v. Herrera,* 878 F.2d 997, 999–1000 (7th Cir.1989). Based on the following exchange between the government and its witness, a chemist, there was no error:

Q. Were you able to determine if that stuff was basically crack?

A. Yes, sir.

Q. Was it?

A. Yes, sir, it was.

Q. I guess I should ask you then, do you have an opinion based upon a reasonable degree of scientific certainty what the items in Government Exhibit # 1 is?

A. That each of the eight inner bags did contain cocaine.

Q. Crack cocaine?

A. Yes, sir.

██ Green also claims the district court erred in increasing his base offense by two levels pursuant to Sentencing Guidelines

§ 2D1.1(b)(1). For offenses involving drugs, this section requires the court to increase the defendant's base offense level by two "[i]f a dangerous weapon (including a firearm) was possessed." "We review a district court's factual determination to enhance a sentence under § 2D1.1(b)(1) for clear error only." *United States v. Wetwattana,* 94 F.3d 280, 283 (7th Cir.1996).

The district court found that Green possessed a dangerous weapon because a firearm loaded with six rounds was in a gym bag on the floor of the car next to the front passenger seat. This is sufficient to support an enhancement under 2D1.1(b)(1) because, as Application Note 3 to this section explains, "[t]he enhancement for weapon possession reflects the increased danger for violence when drug traffickers possess weapons." Application Note 3. "[T]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense." Application Note 3. Given the proximity of the drugs and the firearm, it "is not clearly improbable that the weapon was connected to the offense." *United States v. Carmack,* 100 F.3d 1271, 1280 (7th Cir.1996) ("Proximity between the firearm and drugs is an appropriate test for determining whether the gun was *possessed* in connection with the drug offense and whether the offender has [mixed] guns and drugs."). Therefore, the district court did not err in increasing Green's offense level by two.

## III. Conclusion

The police violated the Fourth Amendment when they stopped the Green brothers. Yet any taint from this unconstitutional seizure was dissipated by the subsequent legal arrest of Avery pursuant to an outstanding warrant. Therefore, the evidence obtained during the search of the car was admissible as a search incident to a lawful arrest. Accordingly, we affirm the district court's denial of David Green's motion to suppress. We also affirm the district court's sentence because the evidence was sufficient to support the finding that the cocaine was crack, and that the gun found in the car was possessed during the drug offense.