**FOR PUBLICATION**



FILED
Oct 07 2013, 5:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TERESA L. CATALDO**
Cataldo Law Offices, Inc.
Bristol, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DORIAN GRAY JACKSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1210-CR-572 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1104-FA-9

**October 7, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Dorian Gray Jackson appeals his convictions for possession of a narcotic drug with intent to deliver as a class A felony, two counts of dealing in a narcotic drug as class B felonies, and possession of marijuana as a class A misdemeanor. Jackson raises one issue, which we revise and restate as whether the trial court abused its discretion by admitting evidence obtained following the traffic stop and arrest of Jackson. We affirm.

FACTS AND PROCEDURAL HISTORY

Elkhart County Sheriff's Undercover Officer 193 ("UC 193"), a member of the Interdiction and Covert Enforcement Unit (the "ICE Unit"), a countywide drug task force for Elkhart County, received information that two cooperating sources wanted to work together to identify and target their source who was identified as Dorian Stephens residing in the Overlook Apartments in Elkhart. On March 14, 2011, UC 193 and other officers met with Cooperating Sources 11-005 ("CS 11-005") and 11-006 ("CS 11-006"). The police searched CS 11-005 and CS 11-006 and CS 11-006's vehicle. CS 11-005 placed a phone call to Stephens advising that they were going to be on their way for a purchase. After twenty or thirty minutes, Stephens called back and said that he was ready to meet and directed them to drive to the playground area of Overlook Apartments.

UC 193 accompanied the cooperating sources in CS 11-006's vehicle to the Overlook Apartments. Shortly after arriving, a white Chevrolet Suburban approached them and stopped, and the cooperating sources recognized the driver as Stephens. Jackson, Stephens' son, exited the Suburban, entered CS 11-006's vehicle, received money from CS 11-005, and gave heroin to CS 11-005. After a brief conversation, Jackson exited the vehicle.

On March 29, 2011, CS 11-005 called Jackson, and Jackson instructed him to go to a different location. Prior to the buy, the cooperating sources and CS 11-006's vehicle were searched. CS 11-006 drove CS 11-005 and UC 193 to the location, and Jackson entered the vehicle. CS 11-005 handed Jackson money, and Jackson handed him heroin.

The police observed Jackson in a white Dodge Stratus on other buys and during surveillance. The cooperating sources had told police that they believed that the Stratus was used to go to Chicago to retrieve more heroin. Without a search warrant, Undercover Officer 8621 placed a GPS device on the Stratus. The GPS device was used to assist with visual surveillance and to determine that the Stratus had gone to Chicago and was traveling back to the Elkhart area on March 30, 2011. Once the police had observed that the Stratus was going to Chicago, they decided that a traffic stop would be initiated, if possible, when the Stratus returned to Elkhart.

Elkhart County Sheriff's Detective Jeremy Stout positioned his vehicle on County Road 6 and observed the tracking device on his computer and that the "GPS unit was indicating that the vehicle on which the device was placed was traveling eastbound on Cleveland Road, which was also County Road 6." Transcript at 147. Detective Stout did not see the vehicle until its approach of Ash Road but knew of its location because of the GPS. Detective Stout was specifically planning to arrest Jackson, was not just performing traffic control, and was aware of the location of the Stratus because of the GPS tracking. The driver of the Stratus stopped at Ash Road on County Road 6, activated the turn signal, and turned south. Based upon the driver's failure to signal 200 feet prior to making a turn, Detective Stout initiated a traffic stop and observed that

3

Jackson was the driver. Detective Stout asked Jackson to step out of the vehicle and noticed that Jackson's belt was undone, his pants were hanging down, and he was attempting to pull up his pants as he was stepping out of the vehicle. Detective Stout arrested Jackson, searched him, and discovered a baggie of heroin and a baggie of marijuana in Jackson's boxer briefs.

On April 4, 2011, the State charged Jackson with: Count I, dealing in a narcotic drug as a class A felony; Count II, dealing in a narcotic drug as a class B felony; Count III, dealing in a narcotic drug as a class B felony;[1] Count IV, dealing in a narcotic drug as a class B felony; and Count V, possession of marijuana as a class A misdemeanor.[2] On September 28, 2011, Jackson filed a motion to suppress all evidence located on Jackson's person and in his vehicle, the evidence obtained from a cell phone, and all evidence from the controlled buys. Jackson argued that his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution were violated. After a hearing, the court denied Jackson's motion to suppress. Specifically, the court's order states in part:

15.     Finally, [Jackson] challenges the officers' use of the GPS device in this case. Recently, the United States Supreme Court held that the government's warrantless attachment of a GPS device to a vehicle, and its use of that device to monitor the vehicle's movements, constitutes a prohibited search under the Fourth Amendment. United States v. Jones, [132 S. Ct. 945 (2012)]. Accordingly, any evidence or information obtained by the ICE Unit in this case solely

---

[1] Count III related to a controlled buy that occurred on March 16, 2011, but this charge was later dismissed.

[2] Counts I and V related to March 30, 2011, Count II related to March 14, 2011, and Count IV related to March 29, 2011.

4

as a result of the GPS tracking device which was attached to [Jackson's] vehicle is inadmissible.

16. Notwithstanding that result, the testimony in this case establishes that the only information learned via the tracking device was that [Jackson] traveled to and from Chicago. Law enforcement neither tracked or investigated any specific locations [Jackson] may have frequented in Chicago, nor obtained any information regarding drug trafficking. In this regard, government officials did not discover new, previously unknown activities or locations of [Jackson] via the GPS device. ICE Unit officers were already aware of the vehicle [Jackson] operated and knew that he had engaged in three illegal drug transactions. [Jackson's] vehicle was stopped for a traffic violation after visual surveillance in Elkhart County, Indiana. ICE Unit officers had probable cause for a felony arrest of [Jackson] based on the three prior sales of heroin, and they seized additional illegal narcotics in conjunction with that arrest during a lawful traffic stop. Therefore, the evidence [Jackson] seeks to suppress was discovered irrespective of the GPS device and is, thus, admissible. [Jackson's] assertion that the GPS device also violated Article I, Section 11 of the Indiana Constitution, although unsupported by cogent argument or citation to authority, is rendered moot given the United States Supreme Court's ruling in Jones, *supra*.

17. A trial court has broad discretion in ruling on the admissibility of evidence and will be reversed only upon a finding of an abuse of discretion. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Washington v. State, 784 N.E.2d 584, 586-87 (Ind. Ct. App. 2003). In the case currently before the court, considering all facts and the totality of the circumstances, the court hereby finds that there was probable cause for [Jackson's] arrest, and any evidence obtained as a result of that arrest and/or the traffic stop is admissible.

Appellant's Appendix at 44-45.

The State moved to dismiss Count III, and the court granted the motion. During the bench trial, Jackson's counsel objected at various points based upon the same reasons raised in the motion to suppress, and the court overruled the objections. The court found Jackson guilty of Counts I, II, IV, and V, and sentenced him to thirty-seven years with

5

four years suspended for Count I, possession of a narcotic drug as a class A felony, fifteen years for Count II, dealing in a narcotic drug as a class B felony, fifteen years for Count IV, dealing in a narcotic drug as a class B felony, and one year for Count V, possession of marijuana as a class A misdemeanor. The court ordered that the sentence imposed under Count V be served concurrent with the sentence imposed under Count I and that the sentences for Counts II and IV be served concurrent with each other but consecutive to Count I. Thus, the court sentenced Jackson to an aggregate sentence of fifty-two years with four years suspended.

## DISCUSSION

The issue is whether the trial court abused its discretion by admitting evidence obtained following the traffic stop and arrest of Jackson. Although Jackson originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. See Jefferson v. State, 891 N.E.2d 77, 80 (Ind. Ct. App. 2008), trans. denied; Lundquist v. State, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005).

We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. Roche v. State, 690 N.E.2d 1115, 1134 (Ind. 1997), reh'g denied. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission

6

constituted harmless error. <u>Fox v. State</u>, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), <u>reh'g</u> <u>denied</u>, <u>trans.</u> <u>denied</u>.

While Jackson moved to suppress all evidence obtained as a result of the traffic stop as well as evidence from the controlled buys, he challenges only the admission of evidence obtained as a result of the traffic stop. Jackson argues that the evidence obtained following the traffic stop constituted fruit of the poisonous tree. He cites <u>United</u> <u>States v. Jones</u>, 132 S. Ct. 945 (2012), and argues that the trial court "attempted to carve out its own exception to the finding of <u>Jones</u> to allow the inadmissible evidence and testimony in at trial resulting in [Jackson's] conviction." Appellant's Brief at 7. Jackson argues that the "officers' warrantless installation and monitoring of the GPS device violated the Fourth Amendment."[3] <u>Id.</u> at 8 (citing <u>Kentucky v. King</u>, 131 S. Ct. 1849, 1858 (2011)). He contends that none of the exceptions to the warrant requirement apply, and that the State failed to show that the officers stopping him believed him to be armed and dangerous and there was no testimony that the arresting officers perceived any item felt by a patdown.

The State asserts that the evidence of the baggie containing heroin and the baggie containing marijuana were not fruit from the installation of the GPS tracking device and were found incident to a valid arrest. The State contends that, without any reference to

---

[3] In his appellate brief, Jackson cites Article 1, Section 11 of the Indiana Constitution. However, Jackson fails to provide an independent analysis of Article 1, Section 11 of the Indiana Constitution; rather his focus is on the Fourth Amendment of the U.S. Constitution. Failure to make a cogent argument under Article 1, Section 11 of the Indiana Constitution constitutes waiver of the issue on appeal. <u>See</u> <u>Abel v. State</u>, 773 N.E.2d 276, 278 n.1 (Ind. 2002) (concluding state constitutional claim waived where defendant presented no authority or independent analysis supporting separate standard under state constitution); <u>West v. State</u>, 755 N.E.2d 173, 181 (Ind. 2001) (citations omitted); Ind. Appellate Rule 46(A)(8).

the GPS, police knew that: (1) Jackson had conducted three heroin transactions, one just hours before his arrest; (2) Jackson was known to drive the white Stratus that was pulled over for the traffic violation; and (3) police recognized Jackson as the suspect in their drug investigation upon stopping the vehicle. The State argues that "[t]he evidence found pursuant to the proper search incident to arrest was not the result of the GPS device, and any conceivable causal connection between the installation of the GPS and the procurement of the evidence is extremely attenuated at best." Appellee's Brief at 12. The State's position is that "the search yielding the evidence [Jackson] claims was wrongly admitted was a search incident to a valid arrest – not the installation of a GPS device on the Stratus he was driving when he was stopped." Id. at 10. The State also contends that "the police clearly acted in good faith with respect to the installation of the GPS, as case law at the time held that the warrantless use of such devices did not offend the Fourth Amendment." Id. at 12.

> The Fourth Amendment to the United States Constitution provides:
>
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

If the search is conducted without a warrant, the burden is upon the State to prove that an exception to the warrant requirement existed at the time of the search. Black v. State, 810 N.E.2d 713, 715 (Ind. 2004).

In United States v. Jones, 132 S. Ct. 945, 949 (2012), the United States Supreme Court held that the government's installation of a GPS device on a target's vehicle and

8

use of the device to track the vehicle's movements constituted a "search" under the Fourth Amendment. The Court decided Jones on January 23, 2012, months after the police in this case placed the GPS device on the Stratus and after Jackson was arrested. 132 S. Ct. at 949. The State does not argue that the placement of the GPS on the Stratus falls under an exception to the warrant requirement. Even assuming that the police relied upon the GPS device to illegally pinpoint Jackson's location, we cannot say that exclusion is required.

The exclusion of evidence is not the result of a simple "but for" test. Quinn v. State, 792 N.E.2d 597, 600 (Ind. Ct. App. 2003) (citing U.S. v. Green, 111 F.3d 515, 520 (7th Cir. 1997), cert. denied, 522 U.S. 973, 118 S. Ct. 427 (1997)), trans. denied. Not all evidence is the fruit of the poisonous tree because it is the result of an illegal search or seizure. Id. (citing Green, 111 F.3d at 520 (citing Wong Sun v. United States, 371 U.S. 471, 487-488, 83 S. Ct. 407, 417-418 (1963))). "Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. (quoting Green, 111 F.3d at 520). "Evidence may be purged of the primary taint if the causal connection between the illegal police conduct and the procurement of the evidence is 'so attenuated as to dissipate the taint of the illegal action.'" Id. (quoting Green, 111 F.3d at 521).

"Three factors for consideration in determining whether the causal chain is sufficiently attenuated are: '(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and

flagrancy of the official misconduct.'" Id. (quoting Green, 111 F.3d at 521 (citing Brown v. Illinois, 422 U.S. 590, 603-604, 95 S. Ct. 2254, 2261-2262 (1975))). The important consideration in the third factor is whether the evidence came from the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Id. (citing Green, 111 F.3d at 521 (citing Wong Sun, 371 U.S. at 488, 83 S. Ct. at 417)).

With respect to the first factor, it appears that only a short time passed between the illegal reliance on the GPS device and the acquisition of the evidence following the traffic stop. This weighs against finding the search attenuated. See Green, 111 F.3d at 521 (holding that five minutes between an illegal stop and the search of the car weighed against finding the search attenuated). However, the time span between the police misconduct and the search is not dispositive on the question of taint. Id. Rather, we must next consider the presence of intervening circumstances. Id.

With respect to intervening circumstances, the record shows that Detective Stout observed the driver of the Stratus stop at Ash Road, activate the turn signal, and then turn south without signaling 200 feet prior to making the turn. Detective Stout initiated the traffic stop and recognized the driver as Jackson. Detective Stout asked Jackson to step out of the vehicle and noticed that Jackson's belt was undone, his pants were hanging down, and he was attempting to pull up his pants as he was stepping out of the vehicle. Based upon Detective Stout's observations, he was concerned for his safety in that Jackson could have a hidden weapon, or Jackson could be hiding contraband. Based

10

upon the prior controlled buys, Detective Stout had probable cause to arrest Jackson.[4] With the right to arrest Jackson came the right to conduct a search incident to an arrest. See Merritt v. State, 488 N.E.2d 340, 342 (Ind. 1986) ("Where police have probable cause to apprehend an individual, they are justified in conducting a limited search for the purpose of removing weapons or other contraband within the arrestee's control."); Smith v. State, 980 N.E.2d 346, 348 (Ind. Ct. App. 2012) (concluding that because the officer had probable cause to arrest the defendant, the search was a valid search incident to arrest, and, as such, Smith's constitutional rights were not violated), trans. denied. We conclude that the intervening circumstances, including the traffic infraction, the discovery of Jackson as the driver whom the police had probable cause to arrest, and the position of Jackson's pants, were sufficient to dissipate any taint caused by the illegal reliance on the GPS device.

Finally, we look to the purpose and flagrancy of the official misconduct. The purpose of the stop was to arrest Jackson and the police had probable cause to make the arrest. Jackson does not argue that the police did not act in good faith in attaching the GPS device to the Stratus. As previously mentioned, at the time that the police placed the GPS device, the United States Supreme Court had not yet decided Jones and the Seventh Circuit had held that GPS tracking did not constitute a search under the Fourth Amendment. See United States v. Garcia, 474 F.3d 994, 997 (7th Cir. 2007) (holding that GPS tracking does not constitute a search under the Fourth Amendment), reh'g denied, cert. denied. Under the circumstances, we cannot conclude that the officers'

---

[4] Jackson does not argue that the police did not have probable cause to arrest him based upon the prior controlled buys.

11

actions were flagrant or intended to exploit an illegality. We conclude that the circumstances were sufficient to remove the taint from any police illegality.

For the foregoing reasons, we affirm Jackson's convictions.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.