UNITED STATES, Appellee,

v.

Richard M. WALLER, Private First
Class, U. S. Army, Appellant.

No. 32,073.
CM 431884.

U. S. Court of Military Appeals.

March 23, 1977.

*Captain Sammy S. Knight* argued the
cause for Appellant, Accused. With him on
the brief were *Colonel Alton H. Harvey* and
*Lieutenant Colonel John R. Thornock*.

*Captain Russell S. Estey* argued the cause
for Appellee, United States. With him on
the brief were *Colonel Thomas H. Davis,
Lieutenant Colonel Donald W. Hansen, Ma-
jor John T. Sherwood, Jr., Major Steven M.
Werner,* and *Captain Lee D. Schinasi.*

Opinion of the Court

COOK, Judge:

The appellant was convicted by general
court-martial of the possession and sale of

phencyclidine, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. We granted review to determine whether there is sufficient evidence to sustain the findings of guilty, whether the testimony of a Government witness was a product of an illegal search, and whether the military judge erred in his instructions to the court members on the maximum imposable sentence.

During an Article 39(a)[1] session, the defense contended that a search of the appellant's apartment by Government agents was illegal. Special Agent Owens testified at the session as a Government witness. He stated that he had interviewed a Private Porter at approximately 2015 hours, December 17, 1973, as a result of Porter's attempt to obtain drugs with an invalid prescription. During the interview Private Porter admitted that he had used drugs, and that the appellant, who lived in the same apartment building, had given him a quantity of drugs to sell. However, he returned the drugs to the appellant because he did not want to be involved. Private Porter then agreed to make a "controlled" purchase from the appellant.

The substance of the conversation between Agent Owens and Private Porter was made known to Colonel Callaghan, who authorized a search of appellant's apartment contingent on a consummation of the "controlled" purchase by the informant. Private Porter was searched and given three marked one-dollar bills. He was taken to the appellant's apartment building, entered the building, and shortly thereafter returned with a pill which he purported to be a controlled drug. Special Agent Owens examined the substance and, upon concluding it was contraband, entered the building and apprehended the appellant in his apartment. The appellant's apartment was subsequently searched. Colonel Callaghan testified at the Article 39(a) session that at the time he authorized the search he was not convinced of the reliability of the informant but he anticipated his reliability would be established by the completion of the controlled purchase. The military judge ruled the search was not based on probable cause at the time of the authorization and that any information obtained therefrom would be excluded from evidence at the trial.

Trial counsel construed the judge's ruling as having a limited scope; he proposed to call Private Hale, the appellant's roommate, as a witness to the sale in the apartment to Porter. Over defense counsel's objection that Hale's testimony would be tainted by the illegal search, Private Hale was called as a witness at the Article 39(a) session. He refused to testify at first, but after being given a grant of testimonial immunity he did testify that he was present when Private Porter came to the apartment for some drugs. Although Hale did not observe the actual transaction, he saw a number of pink pills, which he had previously seen delivered to the appellant, and $3 lying on a table. After Porter departed, the appellant told Hale that he had either sold or given one of the pills to Private Porter. Hale also testified that previously the appellant had given Private Porter a quantity of pills but Porter had returned them to the appellant. The military judge ruled that Hale's testimony was not a product of the illegal search and he would be allowed to testify before the court members.

Before the court members Special Agent Owens testified to the effect that he searched Private Porter, gave him $3, and transported him to the appellant's apartment building for the purpose of making a "controlled" purchase. Private Porter entered the building at approximately 10:40 p. m., and he returned at 11:10 p. m., December 17, 1973, with a pink pill. On cross-examination he acknowledged Porter's involvement with drugs and his use of a false prescription. Furthermore, he admitted he had been informed Private Porter had proceeded to his own apartment before he went to the appellant's apartment. Other evidence established the chain of custody of the pink pill and its chemical analysis, which revealed the presence of phencyclidine.

1. Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a).

Private Porter testified that on December 14 or 15, 1973, he returned a quantity of drugs to the appellant because he had decided not to sell the contraband for him. He recounted his involvement with a false prescription and his agreement with Agent Owens to make a purchase from appellant. He stated he purchased one pill from the appellant who obtained it from a larger quantity. He gave this pill to Special Agent Owens. Porter acknowledged that he had used and sold drugs and that on the day in question he had ingested five mandrax tablets and, instead of proceeding directly to appellant's apartment, he had first entered his own apartment. Private Porter's wife testified that she and her husband had previously returned a quantity of drugs to the appellant. She also testified that her husband had used drugs and he was present in their apartment shortly before the purchase from the appellant. Private Hale testified before the court members. His testimony was essentially the same as that he had given at the Article 39(a) session. The defense presented one witness who testified that he would not believe Private Hale under oath.

■ As we are concerned with the admissibility of evidence that affects the sufficiency of the case against the appellant, we initially address the issue involving the testimony of Private Hale. If the testimony of a witness is the product of an illegal search, such testimony must be excluded upon objection by the defense. *United States v. Hale*, 1 M.J. 323 (1976); *United States v. Nazarian*, 23 U.S.C.M.A. 358, 49 C.M.R. 817 (1975); *United States v. Armstrong*, 22 U.S.C.M.A. 438, 47 C.M.R. 479 (1973). An inquiry must be made to determine if the witness' identity and his relevancy to the proceedings were tainted by the search and if assuming a primary taint, whether there was sufficient attenuation to purge this taint. *United States v. Nazarian, supra.* As the Court noted in *United States v. Bishop*, 23 U.S.C.M.A. 157, 158, 48 C.M.R. 773, 774 (1974):

The "apt question" in a case of taint is not whether the evidence admitted against the accused would not have been discovered "but for" previous illegal action by the Government, but rather, conceding illegality of the Government's action, can it reasonably be concluded that the evidence to which objection is made "'has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States* . . . [371 U.S. 471] at 488 [83 S.Ct. 407, 9 L.Ed.2d 441 (1963)].

Whether a witness' testimony is a product of an illegal search must be decided on the facts and circumstances of each case. *United States v. Nazarian, supra* at 360, 49 C.M.R. at 819.

■ The facts established that the identity of Private Hale was known by Porter, the Government's informant, prior to the search. Indeed, Private Hale's testimony during the Article 39(a) session clearly shows he was present in the apartment when the appellant sold a pill to Porter. Furthermore, the record reflects Porter and Hale had previous contacts and, thus, Hale's identity was known by Porter at the time of the sale. Although there was no specific testimony as to when and in what manner Porter conveyed this information to the Government agents, the military judge indicated in his ruling that he inferred such information was conveyed at some point in the proceedings, and such an inference appears to be reasonable under the circumstances. *See United States v. Evans*, 454 F.2d 813, 819 (8th Cir. 1972), *cert. denied*, 406 U.S. 969, 92 S.Ct. 2423, 32 L.Ed.2d 668 (1972). Thus, we conclude the identity of Hale and his connection with the case was not tainted by the search but, rather, was known from an independent source. *See United States v. Nazarian, supra* at 360, 49 C.M.R. at 819; *United States v. Crouch*, 528 F.2d 625 (7th Cir. 1975), *cert. denied*, 429 U.S. 900, 97 S.Ct. 267, 50 L.Ed.2d 184 (1976); *United States v. Evans, supra.* Furthermore, while *United States v. Hale, supra,* and *United States v. Nazarian, supra,* also held that a witness' testimony should be suppressed if his willingness to testify was a product of the search, the

aforementioned circumstances reflect that no such leverage factor was exerted by the search in question.[2]

Even if we assume arguendo the existence of primary taint, the case at hand presents circumstances sufficiently distinguishable to purge that taint. The issue of whether such taint has been purged by other intervening factors has developed into a concept of attenuation. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Evans, supra* at 817. This concept, as noted in *Nazarian,* must be analyzed within the factual structure of each case. In the present case Private Hale originally refused to testify, but subsequently testified only because he was ordered to do so and was granted immunity. In *United States v. Marder,* 474 F.2d 1192 (5th Cir. 1973), the court indicated one factor tending to show attenuation was the original uncooperative attitude of a witness. Where a witness' testimony results from the intervening act of the Government granting the witness immunity, such act would strongly indicate attenuation of the original taint. Furthermore, Private Hale was obviously aware his implication in the drug transaction was known by the Government informant prior to the search. Accordingly, assuming primary taint, the connection between his testimony and the search had become so attenuated by independent factors as to dissipate the taint.

▮ As to the issue of whether there was sufficient evidence to sustain the findings of guilty, we note the testimony of Privates Porter and Hale clearly established the appellant sold a pill to Private Porter and this pill was taken from a larger quantity located in the appellant's apartment. Although there was evidence which tended to discredit these witnesses, the primary issue for the triers of fact was credibility which was resolved against the appellant. *See United States v. Lowry,* 2 M.J. 55 (1976); *United States v. Polak,* 10 U.S.C.M.A. 13, 27 C.M.R. 87 (1958). The pill in question was analyzed, and this analysis revealed the presence of phencyclidine. While there is no evidence in the record that the larger quantity retained by the appellant was also analyzed, an analysis of a pill taken from the larger quantity would circumstantially prove the nature of the quantity retained by the appellant. *See United States v. Weinstein,* 19 U.S.C.M.A. 29, 41 C.M.R. 29 (1969). Under the circumstances the evidence is not insufficient as a matter of law.

▮ Turning to the sentence instructions, the military judge instructed the court members that the two offenses of which the accused was convicted, possession of a quantity of phencyclidine and sale of one pill of phencyclidine, were separate for sentencing purposes and thus, the total maximum confinement was 4 years. The record reveals the offense of possession occurred in the same place and contemporaneously with the sale. Under the circumstances the two offenses were multiplicious for sentencing purposes. *United States v. Axley,* 1 M.J. 265 (1976); *United States v. Harden,* 1 M.J. 258 (1976).

The decision of the United States Army Court of Military Review is reversed as to the sentence. The record of trial is returned to the Judge Advocate General of the Army for submission to the court for reassessment of the sentence in light of this opinion.

Chief Judge FLETCHER and Judge PERRY concur.

---

2. As the Court observed in *United States v. Hale,* 1 M.J. 323, 324 n. 3 (1976), the issue of identity and the leverage factor on a witness are two distinct bases which may require the suppression of a witness' testimony.