UNITED STATES, Appellee,

v.

Robert C. MARINE, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 98–1021.
Crim.App. No. 96–2491.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 10, 1999.

Decided Sept. 10, 1999.

SULLIVAN, J., delivered the opinion of the Court in which COX, C.J., and CRAWFORD and EFFRON, JJ., joined. GIERKE, J., filed an opinion concurring in part and dissenting in part.

For Appellant: *Lieutenant John D. Holden,* JAGC, USNR (argued).

For Appellee: *Lieutenant Margaret E. Jolly,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, *Commander Eugene E. Irvin,* JAGC, USN, and *Lieutenant Kevin S. Rosenberg,* JAGC, USNR (on brief).

Judge SULLIVAN delivered the opinion of the Court.

Appellant was tried by a special court-martial composed of a military judge sitting alone at Camp Pendleton, California, during April and May of 1996. He was charged with a single specification of wrongfully possessing .17 grams of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Contrary to his pleas, he was found guilty of this offense. He was sentenced to a bad-conduct discharge, confinement for 40 days, and reduction to pay grade E–1. The convening authority approved the sentence on November 15, 1996. The Court of Criminal Appeals on June 17, 1998, affirmed the findings of guilty and the sentence as adjudged and approved.

On November 5, 1998, this Court granted review on the following question of law:

WHETHER THE MILITARY JUDGE ERRONEOUSLY ADMITTED INTO EVIDENCE A MARIJUANA CIGARETTE WHICH WAS IMPROPERLY SEIZED FROM APPELLANT AS FRUIT OF A TAINTED *TERRY* STOP.

We hold that this marijuana cigarette was not improperly seized by the Government and that the military judge did not err in admitting it as evidence at appellant's court-martial. *See United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir.1995) ("defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest" and search incident thereto); *see also United States v. Green*, 111 F.3d 515, 523 (7th Cir.1997) (lawful arrest on an outstanding warrant not tainted by illegal, but not bad faith, investigative stop).

At his court-martial, appellant made a motion to suppress certain evidence seized during a search of his person on December 10, 1995. He argued that he was illegally stopped and detained based on his race for investigation of an offense committed by someone else. He further argued that he was detained beyond the time necessary to investigate that offense. Finally, he contended that a search of his person incident to his arrest for disrespect to the investigating commissioned officer was tainted by his prior unlawful stop and detention. In sum, he argued that he was illegally detained and unlawfully searched, so the fruits of that search should not have been admitted at his court-martial.

The military judge made the following findings of fact and conclusions of law concerning the hand-rolled, half-smoked marijuana cigarette discovered in a search of appellant's clothing at the enlisted service-member's club on December 10, 1995:

1. The Fourth Amendment allows a limited government intrusion (stop and frisk) based on less than probable cause (reasonable suspicion) where important government interests outweigh the limited invasion of a suspect's privacy.

2. I find the testimony of 1st Lt. P. Moore to be credible. I base this on his intelligence, ability to observe, relate to the Court only what he could accurately remember, his sincerity and conduct in court, body language and overall demeanor.

3. On the evening of 10 December 1995, Lt. Moore was a commissioned officer in the United States Marine Corps who was the 21 Area Guard Officer.

4. That evening an unidentified black male, wearing a striped rugby type shirt (hereinafter called the suspect) assaulted one of the members of the Area Guard in front of the 21 Area Enlisted Club.

5. The suspect ran to the other side of the E Club.

6. This rough description was radioed to a guard member on that side of the E Club.

7. The guard radioed back he had several (5–6) black males that met that description and could they give a better description.

8. The guard was told to bring all those individuals to the front of the E Club so the suspect could be identified.

9. The accused was in this group of individuals. The accused was wearing a green sweater with a leather coat. Some members of the group had striped shirts.

10. The accused is a black male. All other members of the group were black males.

11. The accused was required to walk with the guard officer to [the] front of the E Club, which took a matter of seconds.

12. I find this limited government intrusion to be based on reasonable suspicion.

13. Upon the group's arrival in the front of the E Club the suspect was immediately identified and apprehended.

14. The accused and other members of the group were not told they were free to go. They were ignored but of course would still be under the impression they were not free to go.

15. The accused should have been told he was free to go when the suspect was identified.

16. The law recognizes "A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might [...] in the abstract, have been accomplished by less intrusive means does not, by itself, render the search unreasonable. The question is not simply whether some other alternative was available, but whether the police acted un-. reasonably in failing to recognize or to pursue it." *United States v. Sharpe*, 470 U.S. 675, [686–] 687, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

17. The accused was detained approximately 5–7 minutes after the suspect was identified.

18. The guard had no evil motive or purpose such as harassment in this detention.

19. This detention was a result of oversight and the concern and focus on the suspect.

20. Ultimately, Lt. Moore came over to address the group of individuals that had been detained.

21. Lt. Moore does not remember what he said.

22. The accused said something to Lt. Moore which, although the Lt. cannot remember what was said, he remembers the tone, content, and absence of the use of the typical military courtesy, of the use of sir or rank, was disrespectful.

23. Before the Lieutenant responded, one of the members of the guard told the accused that he was speaking to a Lieutenant and should do so appropriately.

24. I find this response by the member of the guard to be highly persuasive particularly since the Lieutenant is unable to articulate exactly or the substance of what was said.

25. Lt. Moore was in utilities with his rank insignia. He also had on a guard armband that had his rank.

26. Lt. Moore also looks his age and by that I mean an individual who looks like given a normal career track would be an officer or at least a Sergeant.

27. Lt. Moore identified himself by rank and billet to the accused.

28. Lt. Moore was between 3–6 paces from the accused.

29. The accused leaned over as if to check or confirm the rank of Lt. Moore. Lt. Moore took this to be disrespectful. Under the circumstances Lt. Moore's conclusion is probably correct.

30. The accused then said something to Lt. Moore ending his comments with yes, sir, emphasizing the word sir in a mocking manner.

31. Lt. Moore's actions during this encounter with the accused were reasonable and in keeping with his rank.

32. Lt. Moore ordered the accused's detention which is in fact an apprehension for disrespect to a commissioned officer.

33. Lt. Moore had the authority to order the apprehension by virtue of his rank and billet as guard officer.

34. Lt. Moore had probable cause to apprehend the accused.

35. The immediate search of the accused to include his clothing was lawful as a search incident to apprehension. MRE 314(b).

36. The defense motion to suppress is denied.

— — —

Before this Court, appellant again contends that the "half smoked marijuana joint" taken from his pocket on December 10, 1995, was illegally seized by Camp Pendleton guards and was inadmissible evidence at his court-martial. *See* Mil.R.Evid. 311, Manual for Courts–Martial, United States (1995 edition).[1] He asserts that this evidence was seized during his impermissibly long detention by officers of the guard after he was subjected to an unlawful *"Terry"* stop based on his race. He acknowledges that he was also arrested for disrespect to a commissioned officer before the challenged search

---

1. All Manual provisions are cited to the version applicable at trial. The 1998 version is un-

changed, unless otherwise indicated.

and seizure took place. Nevertheless, he argues that this arrest and the subsequent search were tainted by the *"Terry* stop" and the marijuana cigarette must be suppressed as a direct result of the earlier illegality. We disagree.

■ As a starting point, we note that in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court created a limited exception to the Fourth Amendment requirement of probable cause for government search and seizures, *i.e.,* when law enforcement officers conduct a "stop and frisk" *(Terry, supra* at 12, 88 S.Ct. 1868) or *"Terry* stop" *(Michigan v. Summers,* 452 U.S. 692, 700 n. 12, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)). The Court adopted a two-part test to determine when a *Terry* stop is lawful. It first asks whether the police officer's stopping action is "justified at its inception" by "reasonable suspicion" [2] and then whether the stop "was reasonably related in scope to the circumstances which justified" it. 392 U.S. at 20, 88 S.Ct. 1868. We review these questions of law "de novo." *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *see also United States v. Williams,* 35 MJ 323, 327–28 (CMA 1992); *United States v. Waller,* 3 MJ 32, 34–35 (CMA 1977).

■ We further note that race alone does not amount to "reasonable suspicion" to justify a *Terry* stop. *See United States v. Brignoni–Ponce,* 422 U.S. 873, 884–86, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Moreover, the length of the detention may be so long as to render the seizure, even temporarily, of a person unreasonable under the Fourth Amendment. *Sharpe,* 470 U.S. at 685, 105 S.Ct. 1568. The Supreme Court there said:

In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. *See Michi-*

*gan v. Summers, supra* at 701, n. 14, 101 S.Ct., at 2594, n. 14 (quoting 3 W. LaFave, Search and Seizure § 9.2, p. 40 (1978)); *see also Place,* 462 U.S., at 709, 103 S.Ct., at 2645–2646; *Royer,* 460 U.S., at 500, 103 S.Ct., at 1325. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. *See generally post,* at 712–716, [105 S.Ct. at] 1589–1591 (BRENNAN, J., dissenting).... The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

470 U.S. at 686–87, 105 S.Ct. 1568.

■ We need not decide appellant's claim that his initial investigative stop was illegal, because we hold that his subsequent arrest was lawful and a sufficient intervening circumstance to remove any taint from a purported illegal *Terry* stop.

Appellant's argument for suppression depends upon his claim that the marijuana cigarette admitted as evidence in his case was derived from his purported illegal stop and, therefore, was fruit of the poisonous tree within the meaning of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *See generally Williams,* 35 MJ at 328, citing *United States v. Ceccolini,* 435 U.S. 268, 276, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) (rejecting "but for" taint rule); *see* Mil.R.Evid. 311(d)(2)(C) and (e)(2). In this regard, we note that the pertinent question is whether the seizure of the marijuana cigarette from appellant's pocket *"has been come at* by exploitation of that illegality or instead *by means sufficiently distinguishable to be purged of the primary taint." See Waller, supra* at 34, quoting *Wong Sun,* 371 U.S. at 488, 83 S.Ct. 407 (emphasis added). The Supreme Court has generally said that no *per se* rule applies, but various circumstances should be considered on this question such as the "temporal proximity" between the illegality and the seizure of the evidence, "the presence of intervening circumstances,"

---

**2.** *See Almeida–Sanchez v. United States,* 413 U.S.  266, 268, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).

and the "flagrancy of the official misconduct." *See generally Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Appellant asserts that the challenged search in his case actually occurred during his illegal detention. He also contends that "there were no intervening circumstances" in his case between his unlawful stop and detention and the challenged search of his person. Final Brief at 10. He discounts his subsequent arrest as a sufficient intervening circumstance because "if the alleged disrespect was in and of itself significant enough to be 'sufficiently distinguishable' from the initial illegal *Terry* stop, then it begs the question as to why it was not charged as an independent offense in addition to the possession charge." Final Brief at 10–11 (emphasis omitted). Finally, he contends that the official misconduct in his case was flagrant because it was based solely on his race.

We reject appellant's non-attenuation arguments for several reasons. First, we note that the challenged search occurred immediately after appellant's lawful arrest for disrespect to the guard officer and this police conduct was clearly distinguishable from the earlier police investigative action. Five or six Marines were initially stopped and detained by the Marine Guard for investigation but only one was later arrested for disrespect and searched. Second, although appellant was not charged or tried for this disrespect offense, that charging decision did not legally or logically undermine its capacity to attenuate any possible taint from the earlier police action. *See generally* H. Moyer, *Justice and the Military* § 2–382 (1972) (discusses prosecutorial considerations and options for a convening authority). Finally, it is widely held in other federal Courts of Appeals that a lawful arrest of a person who was initially illegally seized is an intervening circumstance sufficient to dissipate any taint caused by an earlier illegal stop.

The Seventh Circuit spoke to this body of law recently in *Green,* 111 F.3d at 521–22, as follows:

> While there is no case law directly on point, *United States v. Nooks,* 446 F.2d 1283 (5th Cir.1971), *United States v. Dawdy,* 46 F.3d 1427, 1431 (8th Cir.1995), and *United States v. Bailey,* 691 F.2d 1009 (11th Cir.1982), are close analogous and support our conclusion. These cases involved situations where the defendant's original seizure was arguably unconstitutional, but after the initial illegal stop, circumstances developed giving the police probable cause to lawfully arrest the defendants. In arresting the defendants, the police conducted searches incident to the arrests and found incriminating evidence. The defendants argued that the evidence was inadmissible as tainted by the original unlawful seizure. The Fifth, Eighth, and Eleventh Circuits disagreed. In *Nooks* the Fifth Circuit held that evidence obtained following a lawful arrest was admissible as a search incident to an arrest, even though the lawful arrest followed an originally illegal detention. *Nooks,* 446 F.2d at 1288. Similarly, in *Dawdy* the Eighth Circuit held that assuming *arguendo* the "initial stop and arrest of Dawdy were invalid, Dawdy's resistance provided independent grounds for his arrest, and the evidence discovered in the subsequent searches of his person and his automobile is admissible." *Dawdy,* 46 F.3d at 1431. Likewise, in *Bailey,* the Eleventh Circuit held that the evidence discovered during a search incident to a second lawful arrest was admissible even though the original seizure was unconstitutional. *Bailey,* 691 F.2d at 1018–19.[3]

[3]. Similarly, in *United States v. Pryor,* 32 F.3d 1192, 1196 (7th Cir.1994), we held that evidence of acts constituting a new crime should not be suppressed even if committed during an illegal detention. While the evidence admitted in *Pryor* was evidence of the second crime itself, and not evidence obtained during a search incident to a second lawful arrest, the same reasoning applies as in *Nooks, Dawdy* and *Bailey.*

We agree with these decisions and conclude that their rationale is equally applicable to cases involving disrespect to a military officer conducting an investigative stop. Moreover, while there may have been some evidence suggesting improper racial consideration as delineated in *Brignoni–Ponce,* 422 U.S. at 886, other evidence in this case suggested mere confusion and miscommunication. *Cf. United States v. Miller,* 48 MJ 49,

52–53 (1998). Thus, the official conduct of the guards in this case, although not a model, was not shown to be so flagrant as to warrant application of the exclusionary rule. *See Green*, 111 F.3d at 523 (official misconduct not flagrant where no bad-faith effort shown to obtain evidence against person illegally stopped); *Miller, supra* at 54 ("military persons enjoy considerably less freedom of movement than civilians"). In sum, appellant exercised his free will to be disrespectful to the officer of the guard; this conduct constituted probable cause for his arrest; and his person was searched and the marijuana cigarette discovered pursuant to a lawful search incident to that arrest. *See generally* Art. 89, UCMJ, 10 USC § 889, and Mil.R.Evid. 314(g).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

GIERKE, Judge (concurring in part and dissenting in part):

I agree with the majority's conclusion that appellant's apprehension for disrespect was not tainted by an unlawful *Terry* stop. I write separately to disassociate myself from the suggestion in the majority opinion that appellant's detention may have been racially motivated. *See* 51 MJ at 428 ("We further note that race alone does not amount to 'reasonable suspicion' to justify a *Terry* stop."); 51 MJ at 429 ("while there may have been some evidence suggesting improper racial consideration . . . .").

In my view, appellant and the others were stopped because the suspect was described as a black male and he was one of several black males who were in the place where the suspects were expected to be found. The brief detention of several potential suspects falls within the rationale of *United States v. Miller*, 48 MJ 49, 54 (1998), where this Court said it was permissible to detain a potential suspect "for the purpose of ascertaining his identity and briefly questioning him about his whereabouts."