In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-2173

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RANDALL R. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 02-CR-10107—**Joe Billy McDade**, *Judge.*

ARGUED FEBRUARY 12, 2004—DECIDED SEPTEMBER 2, 2004

Before CUDAHY, COFFEY, and ROVNER, *Circuit Judges.*

COFFEY, *Circuit Judge.* Defendant-appellant, Randall Johnson, appeals the district court's denial of his motion to suppress. We affirm.

## I. Background

At about 4:30 a.m. on August 18, 2002, Sergeant David Cook of the Peoria (Illinois) Police Department, while on patrol duty, responded to a police dispatch reporting that one individual was showing another a gun in an alley

behind the 400 block of Cornhill Street in Peoria, Illinois. Included in the dispatch was the description of two vehicles, one of which was a four-door gray or silver Buick and the other a maroon-colored car (make of vehicle was unspeci-fied).[1] Cook responded to the call immediately and while in direct route to the location referred to in the dispatch, he observed a silver 1987 Buick Park Avenue heading in the opposite direction. According to Sergeant Cook's testimony, he was approximately six blocks away from the address relayed in the report, the 400 block of Cornhill, when he first encountered the Buick referred to as resembling the

---

[1] Near the conclusion of testimony in the suppression hearing, Johnson's counsel offered an exhibit into evidence, which he identified as a document received from the Peoria Police Depart-ment dispatcher pursuant to counsel's request purporting to show the contents of the police dispatch call. This document has an entry, which is identified in military time as "04:38" (4:38 a.m.), which reads "call received at rear of 415 Cornhill—report of a male black in a maroon vehicle showing a gun to a white male that got out of a gray Buick." R.11, Defendant's Exhibit 3. The remainder of the exhibit recounts the police officers' actions in responding to the dispatch and pulling over a gray Buick. The government did not object to the admission of this document but noted that the language in the exhibit served only as a summary of what transpired and did not constitute a verbatim transcript. The district court admitted the exhibit without objection from the government and informed counsel that what ultimately mattered with respect to the content of the dispatch call was what the officer making the stop *recalled* hearing from the dispatch, and not what the dispatch officer actually said. For example, as recounted *infra*, Cook recalled hearing two separate calls, *i.e.*, one involving an "individual showing another a gun" and a second (in his mind separate and distinct) call involving "vehicle descriptions and where they were at." R. 129.

one described in the radio call.[2] The Buick was the only vehicle on the road at this early hour in the morning (4:30 a.m.).[3]

Sergeant Cook began following the Buick and, shortly thereafter, activated his squad car's overhead lights and signaled the defendant to pull to the side of the road. After the driver pulled over, Cook walked over to the vehicle, shined his flashlight into the passenger compartment and he immediately recognized the driver as Randall Johnson, a man whom he had known for some ten years (because Johnson had previously lived with his (Cook's) stepsister) and whom Cook knew to be wanted on an outstanding arrest warrant.

After recognizing Johnson, Cook directed him to exit the vehicle. Johnson complied and Cook placed him under arrest pursuant to the outstanding warrant. Shortly thereafter, two other Peoria police officers, Officers Goforth and Hunt, arrived on the scene in response to a radio communication from Cook stating he was pulling a vehicle over in the vicinity of McClure and Wisconsin (approximately 12 blocks from where the car was first spotted) matching the description of the one identified in the 4:30 a.m dispatch. Cook and Hunt proceeded to conduct a routine safety search of the defendant by patting him down and checking his clothing and pockets for weapons. During their search of Johnson, the officers removed his cap and, while putting it back on his head, discovered a paper packet (which fell from his hat and landed on Johnson's shoulder) containing an off-white powder, which the officers believed

---

[2] According to Cook, he was in the vicinity of Perry Avenue and Abington Street in Peoria, Illinois, when he spotted the silver Buick, approximately six (6) blocks from the location on Cornhill.

[3] When questioned at trial, Cook testified that the area of Peoria in which the car was spotted is known for drug activity.

to be a controlled substance (powder cocaine). Upon seizing the packet, Officer Hunt walked the defendant to his squad car and secured him in the vehicle while Officers Cook and Goforth proceeded to search Johnson's car, including the trunk, for additional contraband. While searching the trunk of Johnson's vehicle, Cook discovered a partially opened briefcase with a broken clasp and opened the briefcase a few more inches, which led to the discovery of a loaded revolver. Knowing that the defendant was a convicted felon based on a prior aggravated battery offense, the sergeant retrieved and took possession of the weapon. No other contraband was found in Johnson's vehicle.[4] Officer Goforth proceeded to conduct an inventory of the vehicle's contents and recorded the personal property found on the police department's paper form for impounded vehicles.

On September 18, 2002, a federal grand jury indicted Johnson for unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). Subsequently, Johnson filed a motion to suppress the physical evidence discovered, as well as the statements made at the time of his arrest, and argued that the initial stop of the vehicle and the search of the trunk were both in violation of the Fourth Amendment. After hearing the testimony and arguments, the district court denied the motion to suppress in its entirety. The trial

---

[4] However, it should be noted that after the revolver was recovered, Officer Cook mirandized Johnson and elicited a statement from him regarding his activities that night. Shortly thereafter, the police paddy wagon arrived and Johnson was transferred from Hunt's car to the wagon. When Johnson exited the car, the officers found two small cellophane bags, which Johnson later admitted belonged to him and contained crack cocaine. In addition, the car Johnson was driving did not belong to him. It was later learned that the car was actually registered to a George Moss, who could not be reached that morning and thus required the officers to take full possession of the vehicle.

judge found that reasonable suspicion was lacking to justify the initial traffic stop, but nonetheless concluded that the arrest based on the outstanding arrest warrant and the subsequent search of the vehicle were both valid (thus allowing the prosecution to introduce the contested evidence recovered from the car) including the revolver found in the trunk. The court reasoned that the discovery of the controlled substance on the defendant's person gave the officers probable cause to search the entire vehicle for additional contraband. It was upon this lawful search, the court noted, that a loaded revolver was discovered. The trial judge also ruled that the weapon was admissible in evidence because it would inevitably have been discovered during the subsequent vehicle inventory search. After the court's ruling, Johnson entered a conditional plea of guilty, which the trial judge accepted and sentenced Johnson to 30 months in prison and a $100 special assessment. Johnson's guilty plea was accepted by the court and the trial judge allowed him to reserve the right to appeal the denial of his motion to suppress.

A few months later, Johnson personally sent a letter to the trial judge, requesting that he reconsider his denial of his motion suppress. Although the trial judge made clear that ordinarily he refuses to respond to personal letters from a defendant represented by counsel, the judge stated that because he was sufficiently troubled with his prior ruling on the motion to suppress, he requested that counsel provide supplemental briefing on the motion. In a written order dated December 12, 2003, the court granted Johnson's (informal) motion to reconsider stating that the trial court was "sufficiently troubled by the ruling*." United States v. Johnson*, No. 02-10107, *1 (C.D. Ill. Apr. 25, 2004) However, after review of the record and relying on *United States v.*

*Green*,[5] the trial judge reaffirmed his prior ruling and once again denied Johnson's motion to suppress, finding the arrest, search and seizure were conducted pursuant to a valid arrest warrant which "dissipated any taint caused by the illegal stop of the automobile." *Id*. at *3-4. Pursuant to his plea agreement Johnson was sentenced to 30 months imprisonment, three years of supervised release, and a $100 special assessment.

## II. Analysis

Johnson appeals the district court's verbal, and subsequent written order, denying his motion to suppress. We review *de novo* all questions of law, including the existence or absence of probable cause or reasonable suspicion to believe that a crime has been committed. *Ornelas v. United States*, 517 U.S. 690, 697 (1996); *Saffell v. Crews*, 183 F.3d 655, 657 (7th Cir. 1999); *United States v. Finke*, 85 F.3d 1275, 1278 (7th Cir. 1996). Findings of fact are reviewed for clear error and, "'[b]ecause the resolution of a motion to suppress is necessarily fact-specific, we give special deference to the district court that heard the testimony and observed the witnesses at the suppression hearing.'" *United States v. Sholola*, 124 F.3d 803, 811 (7th Cir. 1997) (quoting *United States v. Stribling*, 94 F.3d 321, 323 (7th Cir. 1996)); *see also Ornelas*, 517 U.S. at 697-99.

The government contends that the district judge incorrectly concluded that Sergeant Cook lacked reasonable suspicion to stop the vehicle and, thus, the suppression motion should have been denied on this basis alone. Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), "police officers may conduct a brief, investigatory stop of a suspect if they have reasonable suspicion based on articulable facts that a crime

---

[5]   111 F.3d 515 (7th Cir. 1997).

is about to be or has been committed." *United States v. Wimbush*, 337 F.3d 947, 949 (7th Cir. 2003); *see also United States v. Mancillas*, 183 F.3d 682, 695 (7th Cir. 1999). "Reasonable suspicion" means " 'some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.' " *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). Although police may not detain a suspect based merely on a "hunch," under *Terry* and its progeny "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). When evaluating the reasonableness of a stop, courts must examine the totality of the circumstances known to the officer at the time the stop is made. *United States v. Jackson*, 300 F.3d 740, 745-46 (7th Cir. 2002). With *Terry* stops relating to vehicles, such as the present case, the description, proximity of the vehicle to the suspected criminal activity and the proximity to the reported crime are two important factors to be considered in determining reasonable suspicion. *See United States v. Brown*, 366 F.3d 456, 460 (7th Cir. 2004) (proximity in time of a stop to a report of alleged suspicious activity found to be a valid component of a reasonable suspicion determination); *Cf. United States v. Wimbush*, 337 F.3d 947, 950 (7th Cir. 2003) (concluding that reasonable suspicion for a stop existed when defendant "was driving a vehicle substantially similar to the one driven by the suspect [of a shooting] . . . and the shooting had occurred only minutes earlier in an area just eight blocks away").

After reviewing and analyzing the totality of the facts and circumstances herein, as testified to by the police officers, and the law applicable thereto, we agree with the trial court and refuse to hold that the initial stop was supported by reasonable suspicion. In *United States v. Green*, 111 F.3d

515 (7th Cir. 1997), a case in which the facts are similar to those in the present case, we reversed the district court and held that reasonable suspicion to stop a vehicle was not present, stating: "In this case, the only specific and objective fact the government points to justifying the stop of Green's car is that 'Officer Walker previously saw the defendant's car in front of Williams' house.' That on one occasion a car is parked on the street in front of a house where a fugitive resides is insufficient to create reasonable suspicion that the car's occupants had been or are about to engage in criminal activity. The officers did not claim that the occupants fit the description of Williams; that they were seen entering or leaving the house, or talking with Williams; or that the car was seen in front of the house on multiple occasions or at strange times. Thus, the *Terry* stop was not justified at its inception."*Id.* at 519-20 (footnote omitted).

As in *Green* we hold that the information relied upon by Sergeant Cook concerning the initial traffic stop, as well as Cook's testimony indicating he was not aware of any relation between the suspicious activity and the description of the cars, was insufficient to satisfy the reasonable suspicion requirements of *Terry* and was, therefore, unjustified. Sergeant Cook testified merely that he recalled: (1) spotting a vehicle almost matching the description of the one described in the dispatch traveling within six blocks of suspicious activity (although as noted *infra*, Cook testified that he could not recall if the cars described were related to the alleged illegal activity); (2) traveling in a known drug area; (3) at 4:30 a.m. However, Cook also testified that he did not remember if the dispatch provided information that connected the two vehicles to the two men who were allegedly handling a firearm.[6] Cook admitted upon ques-

---

[6] The closest that any of the officers who responded to the

(continued...)

tioning by Johnson's counsel that it was "*possible* that [a] black male was associated with the maroon vehicle and [a] white male was associated with the Buick." (Tr. at 112 (emphasis added)). However, during the government's redirect the trial judge interjected and asked Cook: "I thought you told [Johnson's counsel] that you could have heard the dispatcher say that there was a black person in one car showing the gun to a white guy in the Buick. You didn't hear that?" Cook responded: "It could have been dispatched that way. I don't recall hearing that. I remember that it was one individual showing another [a] gun, the two vehicle descriptions and where they were at." (Tr. at 129.) Based on the limited amount of information Cook recollects from the radio transmission, and in the absence of him testifying that he recalled any relationship between the vehicles mentioned in the dispatch and the suspicious activity of the two men (one individual showing another a firearm), we are of the opinion that Cook lacked reasonable suspicion to initiate a stop of the vehicle. Thus, we hold that, based on the combination of Cook's testimony and the trial judge's findings, the district court did not err in concluding that Cook did not have reasonable suspicion to initiate the traffic stop and that it was, therefore, illegal. *United States v. French*, 291 F.3d 945, 950-51 (7th Cir. 2002) ("We review a trial court's findings of fact in a suppression hearing for clear error.").

However, despite the fact that the initial stop was

---

[6] (...continued)

dispatch came to specifically associating the vehicles with the two men was Officer Hunt's testimony that the dispatch said "[t]here were two gentlemen in the 400 block [of Cornhill] looking at a gun behind *their* cars." (Tr. at 11. (emphasis added)). In later questioning, Hunt described the dispatch as saying there were "two gentlemen, one in a maroon vehicle and one in a silver Buick," (Tr. at 21.), but he then admitted to not recalling all of the specifics of the dispatch call.

unlawful, evidence seized as a result of the unlawful traffic stop may be introduced into evidence at trial if intervening circumstances establish that the evidence came about without "exploitation of that illegality [and] instead by means sufficiently distinguishable to be purged of the primary taint." *Green*, 111 F.3d at 520 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). This court will evaluate three factors when determining whether sufficient attenuation exists to dissipate the initial taint of unlawful police conduct: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.* at 521 (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).

The decision in *Green* is helpful in our analysis of the facts and circumstances in the case at bar. In *Green*, the defendant was driving a vehicle that the police stopped without reasonable suspicion. *Id.* at 520. During the course of the traffic stop, the officers discovered that a passenger in the vehicle was wanted on a valid outstanding warrant. *Id.* at 517. The passenger was arrested and the vehicle was searched incident to that arrest. *Id.* In the vehicle the police discovered crack cocaine (in a shopping bag on the floor in front of the driver's seat) and a gun (in a gym bag on the floor on the passenger's side), prompting them also to arrest the driver. *Id.* Before trial, the district court denied the defendant's motion to suppress the evidence of the drugs and gun as the fruits of an unlawful detention. We affirmed on appeal, holding that a lawful arrest based on an outstanding warrant for a passenger in the vehicle constituted an intervening circumstance that dissipated any taint caused by an initial traffic stop that had lacked reasonable suspicion. *Id.* at 521-23. We noted that, in comparison to other instances in which the Supreme Court has permitted the admission of evidence acquired after an unlawful action, "[w]here a lawful arrest pursuant to a warrant constitutes

the 'intervening circumstance' (as in this case), it is an even more compelling case for the conclusion that the taint of the original illegality is dissipated." *Id.* at 522. Indeed, "[i]t would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant." *Id.* at 521.[7]

Applying *Green*, we note that once Sergeant Cook identified Johnson as a person previously known to him, who had an outstanding arrest warrant, Cook had probable cause to arrest him independent of the circumstances of the initial stop. *See id.* Indeed, Johnson concedes this point, as well as the authority of the police officers to search him incident to the lawful arrest on the outstanding warrant. However, Johnson argues that the search, following his arrest, went beyond its lawful scope when the officers searched the trunk of the car. In support of this argument he claims that a lawful arrest of a person in a vehicle entitles an officer to perform a warrantless search *only* of the area of the vehicle that the passengers were occupying, and not the trunk. *See Mancillas*, 183 F.3d at 699 (citing *New York v. Belton*, 453 U.S. 454, 460-61 (1981)).

However, Johnson ignores the fact that Cook discovered (falling out of the hat) what he believed to be a controlled substance while performing a search pursuant to the outstanding warrant. This alone provided Cook with probable cause that a crime had been, or was being committed and, therefore, he was not violating Johnson's constitu-

---

[7] Regarding the elapsed-time factor, this Court noted that when a lawful arrest due to an outstanding warrant is the intervening circumstance, the temporal component is less relevant than in situations where the police exploit an illegal detention to create a predictable response (*e.g.*, confession or consent to search). *United States v. Green*, 111 F.3d 515, 522 (7th Cir. 1997).

tional right when searching the vehicle, *including the trunk*.[8] Under *Carroll v. United States*, 267 U.S. 132 (1925), and its progeny, a vehicle may be searched without a warrant if there is probable cause to believe it contains contraband or evidence of a crime, and this type of search "lawfully extends to all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments and trunks." *United States v. Patterson*, 65 F.3d 68, 70 (7th Cir. 1995) (internal quotation marks omitted). Probable cause to conduct a search of this type exists if, given the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in [the vehicle]." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Thus, Cook's discovery of a banned substance[9]

---

[8]  Also, it should be noted that we are cognizant of and agree with the district court's alternate basis for admitting the contested evidence; that the firearm would have eventually been discovered through a required inventory search of the vehicle and its contents. It is well-settled that police are authorized to search vehicles lawfully taken into custody as part of a post-arrest inventory search "in order to secure or protect the car and its contents." *United States v. Wimbush*, 337 F.3d 947, 950-51 (7th Cir. 2003). Therefore, assuming *arguendo* that Cook did not initially have probable cause to search the trunk, after legally arresting Johnson on the outstanding warrant, the firearm would have nevertheless been discovered later when the police took possession of the vehicle he was driving and performed an inventory search, thus rendering the firearm admissible at trial.

[9]  Johnson argues that because officers "only found a small amount of untested powder in Mr. Johnson's hat," police lacked probable cause to search the trunk compartment of his vehicle. However, this argument is unconvincing. Probable cause to search will exist if "given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Patterson*, 65 F.3d 68, 71 (7th Cir. 1995). Thus, the fact that Cook did not immediately field test
(continued...)

(drugs) on Johnson's person clearly provided him with probable cause to search the trunk of the vehicle, including any containers (*i.e.*, the briefcase) therein, since the officer had a reasonable basis for believing that more drugs or other illegal contraband may have been concealed inside. *See United States v. Young*, 38 F.3d 338, 340 (7th Cir. 1994) (citing, *inter alia*, *California v. Acevedo*, 500 U.S. 565, 570 (1991)). The sequence of events in this case leading up to the search—(1) an unlawful stop; (2) a lawful arrest of the driver of a vehicle who is known to be wanted on an outstanding warrant; (3) discovery of controlled substances on that driver (Johnson) during a search incident to his arrest; and (4) the ultimate discovery of a loaded weapon in the trunk while searching the defendant's vehicle based on the probable cause to believe additional contraband was located therein—also demonstrates that the unreasonable nature of the traffic stop by the officers was neither purposeful nor flagrant, much less did any additional misconduct occur after the stop.

---

[9]  (...continued)
the white substance believed to be contraband does not automatically render his search of the vehicle unjustified. In addition to the discovery of the white powder Cook also had personal knowledge of Johnson's cocaine habit. Cook testified that Johnson "would go on weeks' long binges, smoking cocaine and selling off property to get money to buy cocaine." (Tr. at 88.) In addition, on the night in question, Cook stated that he observed Johnson's appearance to be "not healthy" and testified further that he believed Johnson was "strung out," meaning that he appeared to be under the influence of a controlled substance. These circumstances provided Cook with sufficient reason to believe that the substance contained in the white packet was, in fact, a controlled substance and thus a field test was unnecessary to establish probable cause to search the car (including the trunk). *See Patterson*, 65 F.3d at 71-72.

### III.  Conclusion

The officers' knowledge that Johnson was wanted on an outstanding warrant constituted an intervening circumstance, which gave officers probable cause to arrest Johnson independent of the illegality of the initial unlawful stop. This, when viewed in combination with the discovery of contraband on Johnson's person, more than justified the officer's search of Johnson's vehicle, including the trunk. Therefore, the district court properly denied the defendant's motion to suppress and the judgment of the district court is

AFFIRMED.


A true Copy:

       Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*


USCA-02-C-0072—9-2-04