NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 5, 2008
Decided April 30, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-2695

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>      *Plaintiff-Appellee*,<br><br>      *v.*<br><br>KARRON SADDLER, also known as<br>ALONZO SADDLER, also known as<br>ALONZO SILER,<br>      *Defendant-Appellant*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 06-CR-45-1<br><br>William J. Hibbler<br>*Judge.* |

**O R D E R**

Chicago police detained and searched Karron Saddler after a store owner called 911 to report that his employee saw a man with a gun in the store. The police soon found a gun on Saddler, who was later charged with possession of a firearm by a felon. *See* 18 U.S.C. § 922(g)(1). Saddler moved to suppress the gun, arguing that the police

did not have reasonable suspicion for a *Terry* stop.  After the district court denied his motion, Saddler entered a conditional guilty plea reserving this issue.   The court sentenced him to 180 months' imprisonment, and Saddler now appeals, challenging only the suppression ruling.  Because the police had reasonable suspicion to detain and search Saddler, we affirm the judgment.

The store owner who called 911 told the operator that an employee at his business had just telephoned him to report that he saw a man in the store shifting a gun in his waistband.  The store owner described the man as "a stocky black guy" with "a bald head" who "had just left" the store in the past five minutes.  When the operator asked which direction the man had gone, the store owner called his employee using another phone and relayed to the operator the direction the man walked after he left the store.  The caller gave the operator his name and the address of his store but refused to identify the store by name and asked that he and his employee be kept anonymous because the man with the gun was "with the neighborhood gang" and they felt threatened by him.  Before hanging up, the caller offered to provide his phone number, but the operator declined in order to assure his anonymity.

The information from the store owner was promptly radioed to police officers: "[A] person with a gun at [specified address].  Anonymous caller states male has a gun, he lives in the neighborhood, he's a known black, bald, he's heavyset, he has a gun, black gun in his waistband, last seen southbound on St. Louis."  Officers Ramos, Younan, and Feliciano were in a car a few blocks away from the caller's store when they heard the broadcast.  About seven to ten minutes later, the officers saw Saddler in an alley a couple of blocks from the store.  At least two of the officers exited the car with guns drawn and directed Saddler to walk over to the car and put his hands on the car.  Saddler complied.  While Officer Ramos patted Saddler down, he asked Saddler if he had any contraband or weapons.  Saddler said that he had a gun and nodded towards his left hip.  Ramos took the gun and arrested Saddler.

In his suppression motion, Saddler argued that the seizure amounted to an arrest requiring probable cause, and that the "secondhand," "anonymous tip" did not provide probable cause.  He also argued that the "tip" did not give the police reasonable suspicion to conduct a *Terry* stop.  Following a hearing, the district court concluded that the initial seizure was a *Terry* stop, not an arrest.  The court held that the stop was supported by reasonable suspicion, though the judge did not give detailed reasons for

his ruling except to say that the caller was not anonymous and so cases dealing with anonymous tips did not control.

On appeal Saddler abandons his argument that the stop constituted an arrest and instead argues only that the stop was not authorized under *Terry v. Ohio*, 392 U.S. 1 (1968). He argues that the store owner did not supply enough detail or indicia of reliability to give the police reasonable suspicion. When evaluating a *Terry* stop, we review legal conclusions de novo and findings of fact for clear error. *United States v. Barnett*, 505 F.3d 637, 639 (7th Cir. 2007). Under *Terry*, "police officers may conduct a brief, investigatory stop of a suspect if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed." *United States v. Wimbush*, 337 F.3d 947, 949 (7th Cir. 2003). We examine the totality of the circumstances known to the officer at the time the stop is made. *United States v. Johnson*, 383 F.3d 538, 542 (7th Cir. 2004).

Saddler asserts that the store owner didn't identify himself or provide enough information to establish his reliability. He relies on *Florida v. J.L*, 529 U.S. 266, 271 (2000), where the Supreme Court held that because an anonymous tip alone can rarely demonstrate an informant's reliability, an anonymous tip usually requires some corroboration to provide reasonable suspicion for a *Terry* stop. In *J.L.* the police received an anonymous tip stating that a young black man wearing a plaid shirt was standing at a particular bus stop and was carrying a gun. *Id.* at 268. The Supreme Court held that the call was unreliable because it provided no predictive information and there were no means to test the tipster's knowledge. *Id.* at 271. The Court stated that, "[u]nlike a tip from a known informant whose reputation can be assessed and who can be responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Id.* at 270 (citations and quotation marks omitted).

But here the store owner who made the 911 call was anything but anonymous—at least to the police—and Saddler's insistence on characterizing him as "anonymous" is unavailing. This case is controlled by *United States v. Drake*, 456 F.3d 771, 775 (7th Cir. 2006), where we stated that "[w]e . . . presume the reliability of an eyewitness 911 call reporting an emergency situation for purposes of reasonable suspicion, particularly when a caller identifies [himself]." We explained that if a caller identifies himself to a 911 operator the tip cannot be characterized as anonymous, even if the 911 operator fails to disclose the name or nature of the caller to the officers making

the stop, and the more stringent standards applied to anonymous tips do not apply. *See id.* at 774 ("[The 911 caller] may have been an informant of untested reliability, but she was not anonymous. Thus, this case is not governed by *Florida v. J.L."*). Saddler argues that the caller, who did not see the gun, provided no predictive information that would test his reliability. But the operator got the caller's name and the location of his store, and that was more than sufficient to establish the caller's reliability and make him accountable if the information turned out to be fabricated. Furthermore, the store owner was describing a dangerous situation—a man carrying a concealed firearm—placing the situation squarely in the type of 911 calls contemplated in *Drake*.

The *Drake* court also held that "it is enough in this case that [the informant's] 911 call reported an immediate threat to public safety and that she provided sufficient details to allow the officers to identify the suspects." *Drake*, 456 F.3d at 775. Saddler contends that "identifying a person as bald and heavy set can cover a wide range of body types and people." But the information provided to the police was sufficient to allow the officers to immediately identify Saddler. In addition to describing the man in the store as stocky, bald, and black, the caller also indicated in which direction and on what street the man was walking. The police searched the immediate area within ten minutes of the call, stopped Saddler only a couple of blocks from the store, and Saddler was the only person that the police stopped after hearing the radio broadcast. The caller's description of the man's physical traits and probable location provided sufficient detail for the police to stop Saddler. *See United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003) ("[P]olice observation of individual, fitting a police dispatch description of a person [seen carrying a gun] near in time and geographic location to [where he was seen] establishes a reasonable suspicion that the individual is the subject of the dispatch.").

AFFIRMED.