COURT OF APPEALS OF VIRGINIA

Present:   Judges Clements, Kelsey and Beales
Argued at Richmond, Virginia


KAHIHL LEONARD VENABLE

                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0833-07-2        JUDGE D. ARTHUR KELSEY
                                        DECEMBER 30, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

Diane M. Abato (Abato & Davis, on brief), for appellant.

Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


The trial court convicted Kahihl Leonard Venable of possession of cocaine with intent to

distribute, Code § 18.2-248, and possession of cocaine while incarcerated, Code § 53.1-203(6).

Venable entered a conditional plea of guilty reserving the right to appeal the trial court's denial

of his earlier motion to suppress.  Because the trial court correctly denied the motion to suppress,

we affirm Venable's convictions.


I.

Though the "ultimate question" whether a police officer has violated the Fourth

Amendment triggers *de novo* appellate scrutiny, Kyer v. Commonwealth, 45 Va. App. 473, 479,

612 S.E.2d 213, 216-17 (2005) (*en banc*), we take up that issue "only after the relevant historical

facts have been established," Logan v. Commonwealth, 47 Va. App. 168, 171, 622 S.E.2d 771,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

772 (2005) (*en banc*). In doing so, we review the facts "in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences," Raab v. Commonwealth, 50 Va. App. 577, 579, 652 S.E.2d 144, 146 (2007) (*en banc*) (citation omitted), and "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers," Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (2008) (citation omitted).

Sergeant Lloyd, a nineteen-year veteran of the Richmond Police Department, and Trooper Sergeant, of the Virginia State Police, worked together one evening as part of a "Firearms Fugitive Initiative" task force operation in a high crime area of Richmond. Patrolling in an unmarked police vehicle, the officers pulled into a restaurant parking lot. They parked their vehicle next to a car already in the parking lot. The police vehicle did not block the car or impede its movements. The stationary car could "back out or go forward in the parking lot" without hindrance. The police vehicle did not deploy emergency lights or sirens.

In civilian clothes, but wearing a "police placard," Sergeant Lloyd got out of his vehicle and walked to the driver's side of the parked car. Neither officer "rushed the car" or "ran up" to it. Lloyd's service handgun was visible, but he did not "put his hand" on it. Lloyd identified himself as a police officer to Venable, who was sitting in the driver's seat, and asked, "Please, can I talk to you?" Lloyd then asked Venable if he had any identification. When Venable provided an "ID" card, Lloyd wrote the information down on his note pad.

At no point during the encounter did either Sergeant Lloyd or Trooper Sergeant tell Venable he was not free to leave. Nor did they "demand" or "tell" Venable to stay. Instead, Lloyd recalled saying only that he would "appreciate it" if Venable would "hang tight" or something to that effect. When asked if he took the "physical identification back to the car" in

order to "run the information" or, instead, whether he relied solely on his notes, Sergeant Lloyd testified: "I just ran it off my notes." While standing outside his vehicle, Sergeant Lloyd radioed his dispatcher with Venable's information and discovered an outstanding warrant for his arrest. Immediately thereafter, Sergeant Lloyd arrested Venable on the warrant.

During the initial encounter, Trooper Sergeant stood between the vehicles at the right, rear side of Venable's car. Dressed in uniform and armed, Trooper Sergeant did not draw his weapon or speak to Venable. Trooper Sergeant stood in a position that did not block Venable's car from either backing up or driving forward out of the parking lot.

Sergeant Lloyd found no weapons or contraband during a pat down conducted incident to Venable's arrest. Before entering the jail, Venable was asked "whether he had anything on him." Venable said he did not. The jailer, however, searched Venable and found a plastic bag with seven grams of cocaine secreted in his buttocks.

A convicted felon, Venable testified the officers "blocked" his car from behind, "jump[ed]" out of their vehicle, and hurried to his driver's side door. Venable also claimed Lloyd took his "ID" card to his police vehicle and returned it only after Venable's arrest.[1] Venable alleged Trooper Sergeant spoke with him while Lloyd was on the radio. Based upon these allegations, Venable moved to suppress the evidence claiming the officers seized him without a reasonable, articulable suspicion of criminality. In reply, the Commonwealth contended the officers did not seize Venable until after they learned of his outstanding arrest warrant. Prior to that, the Commonwealth argued, the officers and Venable were engaged in a consensual encounter.

---

[1] In direct examination, Venable testified he produced a driver's license. On cross-examination, he conceded it was only an "ID" card because he did not have a driver's license.

Finding Sergeant Lloyd's testimony "more credible" than Venable's, the trial court denied the motion to suppress. In response, Venable entered into a conditional Alford plea of guilty to possession of cocaine with intent to distribute, Code § 18.2-248, and to possession of cocaine while incarcerated, Code § 53.1-203(6).[2]

## II.

Venable appeals his convictions claiming the trial court erroneously denied his motion to suppress. He contends his identity was discovered by Sergeant Lloyd during an unlawful seizure and, thus, the drugs later recovered at the jail must be suppressed. We disagree.

To begin with, we question the first premise of Venable's argument. It assumes the encounter in the parking lot, if held to be an unlawful seizure, would require the suppression of the drugs found on Venable at the jail. Venable, however, was arrested and jailed on an outstanding warrant. See United States v. Green, 111 F.3d 515, 521 (7th Cir. 1997) ("It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant."); see also United States v. Simpson, 439 F.3d 490, 496 (8th Cir. 2006); United States v. Johnson, 383 F.3d 538, 546 (7th Cir. 2004); cf. 6 Wayne R. LaFave, Search & Seizure § 11.4(g), at 362 (4th ed. 2004).

We need not address the subject further, however, because we believe Venable's argument fails on its own terms. Under settled principles, "officers are free to engage in consensual encounters with citizens, indeed, it is difficult to envision their ability to carry out their duties if that were not the case." Malbrough, 275 Va. at 169, 655 S.E.2d at 4. A

---

[2] When offering an Alford plea, a defendant asserts his innocence but admits that sufficient evidence exists to convict him of the offense. See North Carolina v. Alford, 400 U.S. 25, 37-38 (1970). In Virginia, an "Alford plea is a variation of a guilty plea" and has "the same preclusive effect as a guilty plea" for purposes of appeal. Cobbins v. Commonwealth, 53 Va. App. 28, ___, 668 S.E.2d 816, 820 (2008) (citations omitted).

consensual encounter "does not require any justification and may be terminated at will by the individual." White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004).

Thus, officers need not have any particularized suspicion to approach "individuals on the street or in other public places" and then put "questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002); see also Barkley v. Commonwealth, 39 Va. App. 682, 691-93, 576 S.E.2d 234, 238-39 (2003). Likewise, "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." INS v. Delgado, 466 U.S. 210, 216 (1984).[3] So long as officers refrain from inducing "cooperation by coercive means," they need no suspicion of criminality to "pose questions, ask for identification, and request consent to search" either the individual or his property. Drayton, 536 U.S. at 201 (citing Florida v. Bostick, 501 U.S. 429, 434-35 (1991)).

Instead, a "person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement, Florida v. Bostick, 501 U.S. 429, 434 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968)), '*through means intentionally applied*,' Brower v. County of Inyo, 489 U.S. 593, 597 (1989) (emphasis in original)." Brendlin v. California, 127 S. Ct. 2400, 2405 (2007). A seizure could never occur, therefore, when "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter" with the police. Id. at 2405-06 (citation omitted).

---

[3] See also McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001) (explaining that "a police request made in a public place for a person to produce some identification, by itself, generally does not constitute a Fourth Amendment seizure"); McLellan v. Commonwealth, 37 Va. App. 144, 153, 554 S.E.2d 699, 703 (2001) (holding, consistent with McCain, that no seizure occurred when the officer "simply requested some identification from appellant").

The reasonable-person test "presupposes an *innocent* person," Bostick, 501 U.S. at 438 (emphasis in original), "rather than one laboring under a consciousness of guilt," Malbrough, 275 Va. at 169, 655 S.E.2d at 4. Framed this way, the test guarantees that Fourth Amendment protections do not "vary with the state of mind of the particular individual being approached." Baldwin v. Commonwealth, 243 Va. 191, 197, 413 S.E.2d 645, 649 (1992) (citations omitted); Barkley, 39 Va. App. at 692, 576 S.E.2d at 239 (citation omitted).

Several factors determine whether an officer "by means of physical force or show of authority" would cause a reasonable person to feel seized. United States v. Mendenhall, 446 U.S. 544, 553-54 (1980). The "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled," Londono v. Commonwealth, 40 Va. App. 377, 398-99, 579 S.E.2d 641, 651 (2003) (citation omitted), all shed light on whether a seizure occurs. See also Barkley, 39 Va. App. at 692, 576 S.E.2d at 239.

No one circumstance, however, should be considered apart from the larger context. An encounter — otherwise consensual — does not become a seizure merely because of the presence of several armed officers, Drayton, 536 U.S. at 204-05, or the failure of the officers to inform the person that he is free to ignore further questioning, Delgado, 466 U.S. at 216, or their failure to tell the individual he is free to leave, Ohio v. Robinette, 519 U.S. 33, 39-40 (1996). "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." Delgado, 466 U.S. at 216.

For these reasons, Venable's encounter with Sergeant Lloyd and Trooper Sergeant cannot be fairly characterized as a seizure. Sergeant Lloyd did nothing more than initiate a conversation

with Venable and ask if he would identify himself. Venable willingly produced his ID card. Lloyd's testimony, accepted as credible by the factfinder, proved that neither he nor Trooper Sergeant ever physically touched Venable, made any threats or demands, drew any weapons, or engaged in any form of aggressive behavior. Nor did they park their unmarked police vehicle so as to block in Venable's car. As in Drayton, there "was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice." Drayton, 536 U.S. at 204.

While both officers were armed, the "mere presence of officers who are uniformed and armed does not constitute a 'show of authority' that transforms a consensual encounter into a seizure" under the Fourth Amendment. Dickerson v. Commonwealth, 266 Va. 14, 18, 581 S.E.2d 195, 197 (2003) (citation omitted). "That most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon." Drayton, 536 U.S. at 205; see also Barkley, 39 Va. App. at 694, 576 S.E.2d at 240.

### III.

Because the trial court correctly denied Venable's motion to suppress, we affirm his convictions.

Affirmed.