JULIA SMITH GIBBONS, Circuit Judge,
concurring in part and dissenting in
part.
I agree with the majority that a remand is necessary to determine whether Gross’s prior escape conviction is a crime of violence under the Armed Career Criminal Act. I also agree with the majority that both Gross’s confession and the DNA evidence linking him to the firearm are sufficiently attenuated from his unlawful seizure by Officer Williams to dissipate any *409 taint from that police action. I disagree, however, with the majority’s reversal of the district court’s denial of the suppression of the firearm and therefore respectfully dissent.
The majority apparently concedes that the unexpected discovery of an outstanding arrest warrant can be considered in the analysis of “whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the ‘taint’ imposed upon that evidence by the original illegality.” United States v. Crews, 445 U.S. 463, 471, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). But, in concluding that the discovery of the firearm here was not sufficiently attenuated from the initial stop to remove its taint, it misreads precedent and applies reasoning inapplicable to the instant facts.
The material circumstances of this case do indeed demonstrate such attenuation. Although the officer stopped Gross without reasonable suspicion, he discovered Gross’s arrest warrant only after he observed Gross in violation of state open-container laws. Gross was then arrested, processed at the jail, and, after four hours, a weapon was found in the jail cell that was later linked to Gross by DNA evidence. Under these circumstances, the evidence of the gun was sufficiently attenuated from the original stop to be admissible against Gross.
I.
Although the underlying rationale of the exclusionary rule is the deterrence of unlawful government behavior, the Supreme Court has explained that “ ‘[wjhether the exclusionary sanction is appropriately imposed in a particular case ... is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.’ ” Hudson v. Michigan, 547 U.S. 586, 591-92, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (quoting United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)) (internal quotation marks omitted). The Supreme Court has therefore “declined to adopt a ‘per se’ or ‘but for’ rule that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest.” United States v. Ceccolini, 435 U.S. 268, 276, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) (citing Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). “Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.” Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (quotation marks and citation omitted).
Accordingly, we must determine whether “the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the ‘taint’ imposed upon the evidence by the original illegality.” Crews, 445 U.S. at 471, 100 S.Ct. 1244. In doing so, we must consider all circumstances relevant to attenuation, including “the length of time between the illegal seizure and the [confession], the presence of intervening circumstances, the purpose and flagrancy of the official misconduct, and whether the officers read the suspect his Miranda rights before he [confessed].” United States v. Lopez-Arias, 344 F.3d 623, 630 (6th Cir.2003) (citing Kaupp v. Texas, 538 U.S. 626, 632-33, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003), and Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 *410 L.Ed.2d 416 (1975)). No single fact in this analysis, however, is dispositive of attenuation. Brown, 422 U.S. at 603, 95 S.Ct. 2254.
A.
While we have not previously considered whether the unexpected discovery of a valid arrest warrant may serve to dissipate the taint of an unlawful detention, we have considered closely analogous circumstances. First, we have held that if a suspect’s response to an illegal stop is a new and distinct crime, such as flight, any evidence recovered incident to the arrest for that crime is not tainted by the unlawfulness of the initial detention. United States v. Castillo, 238 F.3d 424, 2000 WL 1800481, at *5-6 (6th Cir. Nov. 28, 2000) (unpublished table opinion); United States v. Jefferson, 182 F.3d 919, 1999 WL 519298, at *4 (6th Cir. July 15, 1999) (unpublished table opinion). In both Castillo and Jefferson, we concluded that where officers have probable cause to arrest a suspect on a new and independent basis, the lawful arrest authorized the officers to search the defendant, and the evidence seized as a result was admissible. Castillo, 2000 WL 1800481, at *5-6; Jefferson, 1999 WL 519298, at *4.
Second, in United States v. Hudson, 405 F.3d 425, 438 (6th Cir.2005), we confronted the circumstance in which the police were looking for a particular suspect with a known and outstanding arrest warrant. They observed a car driven by the suspect’s girlfriend with two passengers inside who loosely matched a race-based profile of the suspect. Id. The police effectuated a Terry stop, discovered Hudson and removed him from the car, and a search of his person revealed illegal drugs. Id. at 429. His identity as the suspect with the outstanding arrest warrant was then confirmed. Id. After we determined that the stop was unlawful because there was no reasonable suspicion to believe Hudson was in the car, we suppressed the drugs found on Hudson. We noted that “when the police make an illegal stop for the very purpose of arresting the person stopped, they are thereby exploiting the illegal stop in a manner prohibited by the Fourth Amendment and the evidence obtained in a pat-down of the arrested suspect or in a search incident to the arrest must be suppressed.” Id. at 440. In our analysis, we looked to a line of Seventh Circuit cases involving the very issue before us here. Id. (discussing United States v. Green, 111 F.3d 515, 520-23 (7th Cir.1997), and United States v. Johnson, 383 F.3d 538, 546 (7th Cir.2004)).
In Green, the Seventh Circuit upheld the admission of evidence obtained during the search of a car incident to an arrest on an outstanding, previously-unknown arrest warrant discovered during a warrant check following an illegal seizure. Ill F.3d at 520-23. The court reasoned that the officers’ incidental discovery of the outstanding warrant “constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop.” Id. at 521. This was because, in the Seventh Circuit’s view:
It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant — in a sense requiring an official call of “Oily, Oily, Oxen Free.” Because the arrest is lawful, a search incident to the arrest is also lawful.
Id.[1] The Seventh Circuit subsequently reaffirmed this analysis in Johnson, 383 F.3d 538, 546 (7th Cir.2004).
*411 In Hudson, we approved of this analysis and “agree[d] with the Seventh Circuit that the admissibility of evidence obtained in an illegal stop depends on the purpose of the stop.” 405 F.3d at 440. We concluded that where the purpose of the illegal stop was from its very inception to arrest a suspect with an outstanding warrant, the evidence obtained pursuant to an immediate search incident to that arrest must be suppressed. Id. at 440-41. Essential to this conclusion, and evident from our discussion of Green and Johnson, of course, is the notion that where the arrest warrant is previously known to police and serves as the express basis for an unlawful stop, the warrant is not an intervening cause for the discovery of evidence. Rather, it is the primary cause and is fully intertwined with the primary taint. See Hudson, 405 F.3d at 440 (“[T]he officers’ purpose in this case was clear: to arrest Hudson. This they achieved, but only by exploiting a stop unsupported by reasonable suspicion.”).
The majority’s statement that “[although both Green and Johnson are cases in which the Seventh Circuit held that the discovery of a warrant during an illegal stop constituted an intervening circumstance, in Hudson, we relied on Green only to emphasize that the purpose of an illegal stop or search is determinative of whether the fruits of the search will be suppressed,” is nothing short of baffling. (Maj. Op. at 403-04.) Our discussion of Green and Johnson most certainly considered the question of whether an arrest warrant could serve as an intervening circumstance; we sought to distinguish Green and Johnson on the very basis that the Hudson’s arrest warrant was known prior to the illegal stop. Hudson itself makes this point unmistakably:
The [Green] court reasoned that the officers’ incidental discovery of the outstanding warrant “constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop.” [Ill F.3d] at 521. The court explained why the search incident to the valid arrest was sufficiently purged of the primary taint, i.e., the illegal stop:
In this case, while the police inappropriately stopped the Greens, the purpose of the stop was not to seek evidence against the Greens, but to obtain evidence against Mark Williams [the fugitive].... Nor did the police exploit the stop in order to search the automobile. Rather the search came only after they learned that Avery was wanted on a warrant and arrested him.... Our conclusion that the evidence is admissible in this case also will not lessen the deterrent effect of the exclusionary rule on unconstitutional automobile stops because the general rule of exclusion is unchanged. It is only in the unusual case where the police, after a questionable stop, discover that an occupant is wanted on an arrest warrant that the intervening circumstances exception will apply.
Id. at 523 (emphases added). A more recent pronouncement from the Seventh Circuit reaffirms this analysis. See United States v. Johnson, 383 F.3d 538, 546 (7th Cir.2004) (holding that because the officers discovered valid warrants only after they illegally stopped the defendant, the search and arrest of the defendant could not be deemed the pur *412 pose of the stop). As these decisions indicate, when the police make an illegal stop for the very purpose of arresting the person stopped, they are thereby exploiting the illegal stop in a manner prohibited by the Fourth Amendment and the evidence obtained in a pat-down of the arrested suspect or in a search incident to the arrest must be suppressed.
405 F.3d at 440. Thus, Hudson expressly recognized that an incidentally discovered arrest warrant could attenuate the taint from an unlawful stop.[2] We ultimately held that where the purpose of the stop was, from its very inception, to arrest a suspect with a known warrant, the evidence obtained incident to that arrest must be suppressed.
It therefore follows that, where the purpose of the illegal stop is entirely unrelated to the arrest of a particular individual— here, the purpose was the investigation of an unusual circumstance encountered on patrol — a lawful arrest upon the subsequent incidental or unexpected discovery of an outstanding warrant is an intervening circumstance that weighs strongly toward attenuation. See Johnson, 383 F.3d at 546 (holding that because the officers discovered valid warrants only after they illegally stopped the defendant, the search and the arrest of the defendant could not be deemed the purpose of the stop); United States v. Simpson, 439 F.3d 490, 495-96 (8th Cir.2006) (concluding that an “outstanding arrest warrant constitutes an extraordinary intervening circumstances that purges much of the taint associated with” an illegal seizure).
There is even more reason to find attenuation in this case: the outstanding arrest warrant was discovered only after Gross was observed in violation of the open-container law. Just as a suspect’s flight from unlawful detention provides probable cause for police to arrest and search the suspect, so too does the discovery of an outstanding arrest warrant which follows from the observation of a crime completely unrelated to the illegal stop. The combination of these intervening circumstances^ — Williams viewing the open-container violation and then running a positive warrant check — transformed what had been an unlawful encounter with police into a lawful arrest and detention on an *413 unrelated charge.[3] And, “[pjursuant to this lawful arrest, the officers were authorized to search [Gross], and the evidence seized as a result of the search is admissible.” Jefferson, 1999 WL 519298, at *4. The evidence obtained here — a firearm discovered on the jail-cell floor following Gross’s removal to jail — would likewise be admissible.
The majority also relies on two cases from our sister circuits to support its view and implies that the views of other circuits differ from that of the Seventh Circuit on this point. Neither, however, can be read to support the result in this case or the notion that other circuits apply a different rule. In United States v. Lopez, 443 F.3d 1280 (10th Cir.2006), police officers approached two men standing in the street in the early morning, asked for identification, and then took the identification to the patrol car where a warrant check revealed that Lopez had an outstanding warrant for harboring a minor. Id. at 1282. Lopez was subsequently arrested, and a search incident to his arrest uncovered drugs and a firearm. Id. The Tenth Circuit, affirming the suppression of the evidence, held that because the officer “did not have probable cause or reasonable articulable suspicion to detain Lopez until the warrants check was completed, ... the seizure violated the Fourth Amendment.” Id. at 1286. The court concluded that while the initial request for identification was consensual, the prolonged detention for the purpose of executing a warrant check was unreasonable. Id. at 1285-86. These circumstances are quite different than those in the case before us. Rather than unexpectedly discovering an outstanding arrest warrant following a stop unrelated to the warrant, the police seized Lopez for the very purpose of running a warrant check. There is no evidence in the record here, however, that Williams intended to run a warrant check on Gross before he discovered Gross in violation of the open-container law.
United States v. Luckett, 484 F.2d 89 (9th Cir.1973) (per curiam), is similarly distinguishable. There, a jaywalker was asked to produce identification so that officers could execute a traffic citation. Id. at 90. Following the citation, however, the police detained Luckett, ran a warrant check, and discovered an outstanding traffic warrant. Id. A subsequent search incident to Luckett’s arrest on that warrant revealed a package of counterfeit money *414 orders. Id. The Ninth Circuit affirmed the suppression of the evidence, holding that “because [the officers] had no reasonable grounds to be suspicious that there might be a warrant outstanding against [Luckett], this continued detention was unreasonable, and its fruits ... were properly suppressed by the district court.” Id. at 91. It concluded that because the prolonged detention “was done for the sole reason that [Luckett] lacked a driver’s license” and occurred after the citation was issued for the observed infraction, the length and scope of detention was no longer “strictly tied to and justified by the circumstances which rendered its initiation permissible.” Id. at 90-91 (quoting Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) (internal quotation marks omitted). In the case before us, however, Officer Williams ran a warrant check immediately upon observing Gross in violation of the open-container law. And although we have concluded that the placement of Williams’s car rendered the initial investigation of Gross unreasonable under the circumstances, United States v. See, 574 F.3d 309, 313 (6th Cir.2009), Williams’s decision to run a warrant check upon viewing the open-container violation was not itself an unreasonable police act. The brief detention, which occurred for purposes of running the warrant check, was therefore both tied to and justified by the observed infraction.
A finding of attenuation is also supported by the majority’s conclusion that “the purpose and flagrancy of Williams’s actions do not weigh heavily in the attenuation determination.” (Maj. Op. at 406.) With respect to purpose, it is clear that Officer Williams sought to investigate an unusual situation that he encountered late at night: a running car in a parking lot with no driver and a passenger slumped down in the front seat. But a police officer’s desire to investigate unusual circumstances encountered while on patrol is not necessarily a suspect purpose. See See, 574 F.3d at 315 (Gilman, J., concurring) (“Officer Williams had every right to investigate further, but he should have simply parked his patrol car alongside See’s vehicle to carry out the investigation in a consensual manner.”). Indeed, the majority concedes, as. it must, that “there is not sufficient evidence in the record to show that Officer Williams ‘knew [he] did not have probable cause.’ ” (Maj. Op. at 406 (quoting United States v. Shaw, 464 F.3d 615, 630 (6th Cir.2006)).) Nor did the officer stop Gross “in the hope that something might turn up.” Brown, 422 U.S. at 605, 95 S.Ct. 2254. And when Williams encountered the violation of the open-container law, it was perfectly reasonable to expect that he would investigate further and check if the suspect had any outstanding warrants. Nothing about that act indicates that Williams specifically targeted Gross for further investigation for anything other than an observed infraction.
Furthermore, Williams’s unlawful stop in this case was not the type of flagrant act that can overcome the significant attenuation created by the timing and intervening circumstances discussed above. While it is true that Williams had once before blocked in a car in a similar manner, it was not until our recent decision in See, filed after the events in this case, that it would have been clear to Williams that his methods were decidedly an investigatory stop and not a consensual encounter. See, 574 F.3d at 313. Nothing in the record demonstrates that Williams’s actions had the “quality of purposefulness,” Shaw, 464 F.3d at 631, to specifically investigate Gross in the hope that something would turn up. Rather, it appears that Williams investigated an unusual situation on patrol, executed an unsupported Terry stop, and only upon discovering an ongoing violation *415 of law ran a warrant check on the detained suspect. It is also important to reiterate that the unlawful police action in this case was Williams’s blocking Gross’s car rather than engaging in a consensual encounter, and not his act of running a warrant check upon observing a violation of an open-container law. The act of blocking the car to investigate the appearance of unusual circumstances, without more, is not the type of flagrant conduct that might serve to taint evidence discovered under such attenuated circumstances as we have before us.
Given those circumstances, there is sufficient attenuation between the initial unlawful seizure of Gross and the discovery of a firearm on the jail-cell floor. The presence of intervening circumstances in the form of an open-container violation and the subsequent discovery of an outstanding arrest warrant, the lack of evidence of unlawful purpose or flagrant conduct, and the circumstances by which the evidence was discovered well after arrest all favor application of the attenuation doctrine in this case.
II.
For the foregoing reasons, I would conclude that the evidence against Gross is sufficiently attenuated from the initial illegality such that exclusion is unwarranted. Accordingly, I would affirm the district court’s denial of Gross’s motion to suppress.

. The Seventh Circuit found confirmation of this view in case law from the Fifth, Eighth, *411 and Eleventh Circuits. See United States v. Nooks, 446 F.2d 1283, 1288 (5th Cir. 1971); United States v. Dowdy, 46 F.3d 1427, 1431 (8th Cir. 1995); United States v. Bailey, 691 F.2d 1009, 1018-19 (11th Cir. 1982).

. The dicta from United States v. Williams, 615 F.3d 657, 670 (6th Cir.2010), cited by the majority does not change this fact. In Williams, special-duty police officers approached a small group of individuals standing in front of an affordable-housing complex. Id. at 662. One of the officers recognized Williams as a non-resident and told him that he was again trespassing on the housing-complex property. Id. He then asked Williams if there were any outstanding warrants for his arrest, and Williams responded that he thought there might be one outstanding. Id. The officer asked if Williams was armed, and the response lead the officer to believe he was in fact armed. Id. The officer then performed a pat-down search, discovered a concealed firearm, and arrested Williams. Id.
We affirmed the suppression of the firearm because "the information obtained [through the officer’s questioning] was not 'the product of free will under Wong Sun.’ ” Id. at 670 (quoting Brown, 422 U.S. at 603, 95 S.Ct. 2254). Though our discussion of the case included consideration of Green, Johnson, and Hudson, and though we indeed commented that "we have never adopted the [the Seventh Circuit’s] approach as the law of this circuit,” our holding rested solely the fact that the officer "obtained his information by asking Williams a question during an illegal encounter in which a person would not feel free to leave or to refuse to answer questions.” Id. The facts in Williams — the officer recognized Williams, asked about warrants and weapons, and discovered the weapon immediately after Williams indicated that he may have a weapon — readily distinguish it from Hudson or the case at bar.

. The majority asserts that “Gross’s arrest was not based on any action initiated by Gross himself.” (Maj. Op. at 404 n. 5.) Williams's observation that Gross was in violation of the open-container law belies this contention.
The majority also argues that because the open container violation would have resulted only in the issuance of a citation, Williams was not justified in conducting a warrant check. To the contrary, the traffic violation, even if only meriting issuance of a citation, did provide a basis for further inquiry about warrants. See United States v. Smith, 601 F.3d 530, 542 (6th Cir.2010) (finding that pursuant to a valid traffic stop it was not "inappropriate for [the officer] to check both whether [the defendants] had valid identification and whether they had outstanding warrants” even though an officer may detain a motorist no "longer than is reasonably necessary to issue a traffic citation” (internal quotation marks omitted)); United States v. Garrido-Santana, 360 F.3d 565, 573 (6th Cir.2004) (finding that "under the totality of the circumstances, it was objectively reasonable and within the bounds of the traffic stop for [the officer] to have requested a computer check” on the ownership of a vehicle); see also United States v. Black, 240 Fed.Appx. 95, 101 (6th Cir.2007) ("[RJoutine driver’s license checks have been upheld by this court as within the scope of a lawful traffic stop.” (citing United States v. Hill, 195 F.3d 258, 269 (6th Cir. 1999), and Hiibel v. Sixth Judicial Dist. Ct., 542 U.S. 177, 186, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004))).